■ HENRY S. Ross, Appellant, v F.E.I., INC., et al., Respondents.—Order and judgment (one paper) of the Supreme Court, New York County (Elliott Wilk, J.), entered on or about April 26, 1988, which denied plaintiff's motion for partial summary judgment, granted defendants' motion for summary judgment dismissing the complaint, directed that the assignment document dated February 27, 1984 be reformed to reflect the correct disclosure document number, directed plaintiff to assign to defendants all patent applications for the subject invention and directed plaintiff to perform according to the terms of the assignment document of February 27, 1984, is unanimously modified on the law to the extent of denying defendants' motion for summary judgment dismissing the first and second causes of action of plaintiff's complaint, reinstating the first and second causes of action, vacating the direction

that plaintiff assign to defendants all patent applications for the subject invention, vacating the direction that plaintiff perform according to the terms of the assignment document of February 27, 1984, and otherwise affirmed, without costs or disbursements.

Plaintiff was employed from 1976 to 1984 by defendants and their predecessor corporations as an engineering consultant. He states that it was his duty to evaluate the integrity of building panels manufactured by the F.E.I. defendants and to supervise their installation. However, entirely independent of his job responsibilities, he allegedly developed a unique wall panel that was significantly different from any other design previously utilized by F.E.I. Plaintiff thereafter drafted detailed drawings of his invention. Beginning in July of 1982, F.E.I. purportedly engaged in an abortive four-month attempt to procure a contract from defendant Olympia and York Battery Park Construction Corporation to manufacture and install building panels in the Battery Park City Commercial Center. Only when F.E.I. finally presented a modified proposal based upon plaintiff's design, which had been disclosed by him to the F.E.I. defendants in confidence, was the contract ultimately obtained. When plaintiff learned that Olympia and York had orally agreed to permit F.E.I. to supply the panels for the Battery Park project, he insisted that he be fairly recompensed and supposedly received assurances from F.E.I.'s principal, John Fogarty, Sr., that compensation would be forthcoming. Plaintiff then endeavored to protect his rights to his invention by filing a disclosure document with the Patent and Trade Office in or about December of 1982. He asserts that he advised his employers of such filing but that they seemed disinterested at the time. During 1983, plaintiff held further discussions with F.E.I. concerning a payment package in exchange for use of his invention; he maintains that Fogarty, Sr. continued to promise him that "it will be there for you."

Toward the end of 1983, plaintiff contacted the Patent and Trade Office to inquire as to the status of his disclosure statement. He was informed that the document could not be located and, thus, that it had not been accorded a registration number. Plaintiff mailed out a second copy of the form on February 7, 1984, and a registration number was allotted on February 9, 1984. That same month, the F.E.I. defendants allegedly pressed plaintiff to sign an agreement transferring his interests in the invention to them. Although the document recited consideration of $1 (and, apparently inadvertently,

contained the incorrect registration number), Fogarty, Sr., according to plaintiff, represented to him that he would "benefit" and "share" in the revenues from the Battery Park project. In reliance upon those statements, plaintiff executed the assignment, and he subsequently cooperated with F.E.I.'s attorneys in the preparation of a patent application. The papers filed in that respect by F.E.I. identify plaintiff as the inventor. Nonetheless, Fogarty's responses to plaintiff's request for an express compensation agreement became increasingly evasive and indefinite. As a consequence, although plaintiff reviewed and corrected the first draft of the patent application and signed the final application, he declined to execute the patent application assignment until Fogarty's oral promises relating to his invention were reduced to writing. Plaintiff's persistent demands for a written compensation contract and F.E.I.'s refusal to comply eventually resulted in the termination of the association between them.

Defendants' version of events is drastically different than the one offered by plaintiff. In that connection, defendants contend that in July of 1982, F.E.I. was solicited by Olympia and York to submit a bid for furnishing the exterior wall panels for the Battery Park City construction project. While Olympia and York rejected F.E.I.'s original proposal because it lacked certain requirements, F.E.I. was able to secure approval of a modified design which was conceived and created by a number of F.E.I. officials and engineers, including, most significantly, John Fogarty, Sr., chairman, John Forgarty, Jr., president, and Judy Phillips and Martin Kennedy of the engineering department. Plaintiff's sole contribution, defendants urge, was to suggest the adoption of a "Z-clip" arrangement to attach the stone facade to a steel sheet known as a vapor barrier, thereby allowing space for the insertion of insulation. However, since no Z-clip was immediately available, it was Fogarty, Jr. who welded two right-angle brackets together to form a "Z", a temporary substitute. Then, in late 1983 or early 1984, when the F.E.I. defendants decided to seek patent protection for the panel design, they became aware for the first time of plaintiff's prior filing of an invention disclosure document with the Patent and Trademark Office. Plaintiff was confronted concerning his actions, but he claimed that the filing had been undertaken in order to safeguard F.E.I. and that he did not intend to assert any rights to the invention for himself. As a result, plaintiff executed the February 27, 1984 assignment although he provided an incorrect disclosure document number. F.E.I.'s patent lawyers thereafter

were able to convince the company's officers that the assignment precluded any attempt by plaintiff to misappropriate the panel design, and Fogarty, Sr. directed counsel to prepare a patent application. Plaintiff was cited as the inventor because only individuals can be named as inventors notwithstanding that the invention may actually be the property of a corporation.

In his complaint, plaintiff alleges three causes of action. The first of these accuses defendants of having violated their fiduciary relationship to him by misappropriating his invention, the second cause of action is for unjust enrichment and the third for breach of contract. Defendants, in response, claim that plaintiff assigned all interests which he may have had in the subject invention to F.E.I. and, moreover, that any purported contributions by him to the conception and development of the panel design were made by him as an employee of F.E.I. and in the course of his employment. Plaintiff's refusal to execute an assignment transferring title to his patent application, they contend, constitutes a breach of contract and of his fiduciary duty to F.E.I. In addition, defendants charge that plaintiff is not a licensed professional engineer in the State of New York and relied upon a forged New York professional stamp. His false representations and fraud, defendants state, caused them to suffer irreparable harm and financial damages, in part by compelling them to engage the services of an independant licensed engineer whose fees were in excess of $120,000.

At the outset, it should be noted that plaintiff's claim for breach of contract was properly dismissed by the Supreme Court since the record herein is devoid of any indication that the parties had reached an understanding concerning the compensation that he would receive for the panel design. Indeed, even plaintiff admits that defendants never agreed either to a definite payment for his invention or to a fixed percentage of revenues from the Battery Park project. At most, the F.E.I. defendants expressed an intention to somehow reward plaintiff but never committed themselves to a specific arrangement. Therefore, even accepting the truthfulness of plaintiff's factual assertions, there is simply no evidence to demonstrate the existence of any contract, written or oral, between plaintiff and F.E.I. The court, however, was not warranted in granting summary judgment to defendants with respect to the first and second causes of action. While an assignment will not be denied effect because of the absence of consideration (General Obligations Law § 5-1107), this does not

preclude either a claim for fraudulent inducement or for unjust enrichment. Unjust enrichment is described as being "for restitution or on quasi contract and is based on the equitable principles that a person shall not be allowed to enrich himself unjustly at the expense of another" *(Waldman v Englishtown Sportswear,* 92 AD2d 833, 836; *see also, Chadirjian v Kanian,* 123 AD2d 596, 598). In *Sharp v Kosmalski* (40 NY2d 119, 121), the Court of Appeals explained that the imposition of a constructive trust as an equitable remedy is available where the following four criteria have been met: "(1) a confidential or fiduciary relation, (2) a promise, (3) a transfer in reliance thereon and (4) unjust enrichment". Further, "[u]njust enrichment * * * does not require the performance of any wrongful act by the one enriched" *(Simonds v Simonds,* 45 NY2d 233, 242; *see also, Plotnikoff v Finkelstein,* 105 AD2d 10, 13). As the Court of Appeals declared in *Simonds v Simonds (supra,* at 242), what is generally needed is that "a party hold property 'under such circumstances that in equity and good conscience he ought not to retain it' ". Similarly, the assignment of February 27, 1984 does not bar the maintenance of the first cause of action which asserts that plaintiff disclosed a "new, novel and unique" idea to defendants in confidence, and defendants thereupon converted that idea for their own benefit and without just compensation *(see, Ferber v Sterndent Corp.,* 51 NY2d 782).

In view of the widely conflicting scenarios depicted by the parties herein, it is clear that the factual dispute between plaintiff and defendants regarding the invention of the panel design and the attendant circumstances can only be resolved through a trial. Certainly, summary judgment is a drastic remedy which should not be evoked where there is any doubt as to the existence of a triable issue of fact *(Rotuba Extruders v Ceppos,* 46 NY2d 223; *see also, Parker v D/U Third Realty Co.,* 141 AD2d 301). Since plaintiff has raised sufficient facts to support the first and second causes of action in his complaint, the Supreme Court was not warranted in granting summary dismissing these claims, and thus, the Supreme Court inappropriately directed that plaintiff assign to defendants all patent applications for the subject invention and to perform according to the terms of the assignment prior to a determination of the contested questions of fact at trial. Concur—Sullivan, J. P., Asch, Milonas, Ellerin and Wallach, JJ.