■ Martin H. Bauman Associates, Inc., Appellant, v H & M International Transport, Inc., Respondent.—Order of the Supreme Court, New York County (Beatrice Shainswit, J.), entered on or about May 23, 1989, granting defendant's cross-motion for summary judgment dismissing the complaint, is unanimously modified on the law to the extent of denying the cross-motion to dismiss the first cause of action for breach of contract and otherwise affirmed, without costs or disbursements.

Plaintiff-appellant Martin H. Bauman Associates, Inc., an executive recruiter, commenced this action for breach of con-

tract, quantum meruit and account stated. In that regard, it is alleged that in or about September of 1987, plaintiff and defendant H & M International Transport, Inc., which is in the trucking and freight business, entered into a contract whereby plaintiff undertook to perform a search for an executive for defendant corporation for the sum of $44,438.88, payable in three installments of $14,812.96 each, plus expenses. The first such payment was purportedly due immediately, the second in thirty days and the third after the services had been rendered. Defendant answered by asserting, in part, that it had rejected plaintiff's offer to engage in an executive search prior to any candidate being referred, that it had disclaimed plaintiff's proposed contract and that there was no agreement concerning the terms of payment in advance of defendant's hiring an individual sent by plaintiff.

In response to plaintiff's motion for a protective order against defendant's discovery demands, the latter cross-moved for, among other relief, to dismiss the complaint under CPLR 3211 and for summary judgment pursuant to CPLR 3212 on the ground of the absence of any contract between the parties. It is defendant's contention that plaintiff's retainer proposal was never accepted since an advance payment was requested, and any interest expressed by it in plaintiff's services was exhibited before it learned the precise terms for retaining plaintiff. Therefore, defendant urges, no contract, particularly insofar as the requirement for advance payment was concerned, was ever consummated between the parties. There is no doubt that plaintiff never referred any potential employees to defendant, and defendant states that it refused to retain plaintiff and so informed it before any candidates could be sent for interviews. According to Patrick Heaney, defendant's Chairman of the Board, Martin Bauman contacted him at the company's office in Secaucus, New Jersey and represented that he was president of Martin H. Bauman Associates, Inc., an employment agency capable of assisting defendant in filling its personnel needs. Heaney informed Bauman that he might be interested in interviewing people for president of one of the New Jersey divisions. However, Heaney asserts, there was no mention of a fee, and he did not give Bauman definite instructions to proceed. A few days later, Bauman supposedly telephoned Heaney with the names of a few possibilities, but no terms for plaintiff's retention were discussed, and Heaney claims to have advised Bauman that he did not wish to pursue the matter at that time. Nonetheless, Bauman forwarded a proposed letter contract, dated September 11, 1987, which he

asked Heaney to sign and indicate his agreement with the contents therein. Heaney insists that he not only refused to execute or return plaintiff's offer but instructed his assistant to contact Bauman and advise him that he was not interested. It is defendant's position that the only occasion on which Bauman set forth the cost of his services was in this letter, which provides, in pertinent part, that:

"The following are our standard retainer arrangements and will, of course, be applicable to H & M International Transport, Inc. We will be recruiting for a President to oversee, strategize and help expand your three trucking companies located in JFK, Kearny, and Los Angeles. The position will report directly to you.

"Our rates are 33⅓% of the individual's first year's total cash compensation plus out-of-pocket expenses. For initial billing purposes, we have used a base salary of $100,000 plus a conservative bonus of 33⅓% for a total package of $133,330.00. The first one-third payment is due immediately, the second one-third payment is due 30 days thereafter and the final one-third payment is due at the end of the recruit."

At the end of the letter, under Bauman's signature, was the following: "ACCEPTED BY: H & M INTERNATIONAL TRANSPORTATION, INC. By _____ Patrick J. Heany President Chief Executive Officer" and then "Please sign one copy and return."

While it is not contested that defendant neither approved the subject letter agreement nor ever interviewed any candidates referred by plaintiff, Bauman's version of his dealings with defendant is different. In his affidavit in opposition, he states that Heaney was originally scheduled to meet with him on July 29, 1987 at plaintiff's New York office but that the meeting did not take place. Instead, Bauman went to Heaney's office on September 9, 1987 at which time Heaney purportedly claimed that defendant was expanding and that he was seeking a president of defendant's trucking operations. Bauman thereupon gave Heaney some sheets entitled "Management Style and Personality Traits", requesting that he indicate the type of individual that he wanted; Heaney completed the sheets. Bauman further contends that at this meeting, he explained plaintiff's methods of operation and also described the fee arrangement, to which Heaney did not object. It is Bauman's position that he and Heaney agreed that they had a deal and that plaintiff would begin the executive search immediately. Bauman supposedly told Heaney that a letter

confirming the foregoing would be forthcoming. Plaintiff promptly set about looking for appropriate candidates, and, on September 11, 1987, he sent Heaney the letter in question, which the latter retained without complaint. Further, neither he nor anyone else representing defendant ever expressed any disapproval.

Since Heaney had allegedly already agreed to terms, plaintiff perceived no significance in defendant's failure to execute and return the letter contract. Although Bauman never spoke to Heaney again, he did have some conversations with both his secretary and assistant. In early October of 1987, several weeks after defendant claims to have terminated any arrangement between the parties, Heaney's secretary, Ann Masiero, mailed Bauman a list of trucking companies which might have capable people who could be recruited for the vacancy at defendant corporation. This list, as well as a cover note from Masiero, is in the record. Bauman also claims that Heaney's assistant called him on October 9, 1987, declaring that defendant wished to place the search on a six-month hold and inquiring as to whether any money was owed. Bauman purportedly advised her that the first installment was due. Approximately one week later, he wrote to Heaney confirming his discussion with the latter's assistant and enclosing another copy of plaintiff's invoice. Defendant once again failed to respond, and Bauman was unable to reach Heaney over the telephone despite repeated attempts, so, on February 22, 1988, he sent another letter to Heaney demanding payment and asking that Heaney call him in order for them to talk about the matter. On February 25, 1988, Heaney wrote Bauman that "I have no idea where you have the nerve to charge me $14,812.96 for information that was discussed in my office within one hour and then notified you three days later that I had no need for your services. As far as I am concerned there are no monies due." Bauman, however, denies that Heaney or anyone else ever communicated to him prior to October 9, 1987 that defendant did not want to continue its arrangement with plaintiff.

In granting defendant's cross-motion for summary judgment dismissal of the complaint, the Supreme Court found that "[o]n the present record, plaintiff has tendered no factual predicate supporting an actual contractual claim. Any alleged agreement preceding plaintiff's letter of September 11 is incomplete and almost illusory. At that stage, any first year's compensation is speculative because the ultimate compensation would still have to be defined in an agreement between

the executive to be hired and the defendant. The situation at that time was much too inchoate to be translated into the certainty of a binding arrangement." Yet, the rate of compensation outlined in plaintiff's letter of September 11, 1987 is not so speculative and indefinite as to preclude enforcement; the real issue involved herein is whether the parties entered into a valid oral contract, including, of necessity, agreement with respect to the terms of payment.

Certainly, an essential element of any contract is a mutual intent to be bound (*Four Seasons Hotels v Vinnik,* 127 AD2d 310; *see also, Martin Delicatessen v Schumacher,* 52 NY2d 105), and the question of contractual intent is largely one of fact (*Four Seasons Hotels v Vinnik, supra,* at 318). An examination of the various papers submitted by the respective parties clearly demonstrates a factual dispute as to whether an oral agreement was created between plaintiff and defendant. The accounts related by Bauman and Heaney concerning their conversation and the ensuing contacts between Bauman and defendant's employees vary widely. For example, Heaney insists that he and Bauman never mentioned the matter of a fee; Bauman is equally certain that he described in detail the fee arrangement and that Heaney assented to such payment. Heaney claims that a few days after their meeting, he advised Bauman that he was not interested in retaining plaintiff at that time and that as soon as he received Bauman's September 11th letter, he instructed his assistant to call Bauman and terminate their dealings. Bauman, in contrast, contends that he never spoke with Heaney again following their meeting and that weeks after the alleged communication from Heaney's assistant, Heaney's secretary sent him a list of trucking companies, a copy of which was attached to his papers. Moreover, there is no affidavit from Heaney's assistant that she did, indeed, contact Bauman on or about the date of the arrival of the subject letter. Thus, it appears that Heaney's version is not entirely supported by the documentary evidence available. In any event, the record herein reveals an issue of fact sufficient to defeat the motion for summary judgment regarding the existence of an oral contract since it is axiomatic that "on such a motion, the court's role is limited to issue finding, not issue resolution" (*Kriz v Schum,* 75 NY2d 25, 33). Accordingly, the issue of whether or not the parties ever came to a meeting of the minds so as to have entered into an enforceable agreement should properly be left to the determination of the trier of the facts.

The Supreme Court, however, appropriately rejected plain-

tiff's claim in quantum meruit. A cause of action under a quasi contract theory "only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment" *(Clark-Fitzpatrick, Inc. v Long Is. R. R. Co.,* 70 NY2d 382, 388). Nonetheless, recovery is available not only where there has been an actual benefit to the other party but, in the instance of a wrongdoing defendant, to restore the plaintiff's former status, including compensation for expenditures made in reliance upon defendant's representations *(Farash v Sykes Datatronics,* 59 NY2d 500). However, as the Court of Appeals has observed in *Farash v Sykes Datatronics (supra,* at 506): "The plaintiff recovers the reasonable value of his performance whether or not the defendant in any economic sense benefitted from the performance. The quasi-contractual concept of benefit continues to be recognized by the rule that the defendant must have received the plaintiff's performance; acts merely preparatory to performance will not justify an action for restitution."

Further, "[i]n order to make out a claim in quantum meruit, a claimant must establish (1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services" *(Moors v Hall,* 143 AD2d 336, 337-338; *see also, Umscheid v Simnacher,* 106 AD2d 380). In the instant situation, it is evident that no benefit was conferred upon defendant, and if plaintiff expended any sums of money in reliance upon defendant's representations, plaintiff's complaint, as well as all its other submissions, is entirely devoid of any indication of what it spent or, in fact, of the reasonable value of any services which it may have performed. The only thing that can be ascertained from plaintiff's papers is that Bauman made telephone calls and wrote letters to defendant's representatives, most of which were directed at obtaining payment of the first installment. The second cause of action in quantum meruit merely asserts in a conclusory, non-specific manner that plaintiff rendered recruitment services to defendant and demands the alleged contract price of $14,812,96. However, as previously noted, quantum meruit is intended to avoid a party's unjust enrichment; it is certainly not a device wherein a plaintiff may enforce a purported agreement which might ultimately be found not to be viable. Here, plaintiff's second cause of action is, in effect, indistinguishable from its first claim for breach of contract.

Finally, as to plaintiff's third cause of action for an account stated, an account stated cannot be made an instrument to create liability when none otherwise exists but assumes the existence of some indebtedness between the parties or an express agreement to treat the statement in question as an account stated *(Gurney, Becker & Bourne v Benderson Dev. Co.,* 47 NY2d 995). Here, defendant has objected to the purported account stated, and the existence of an underlying contract between the parties has not yet been established. Either the parties entered into a valid agreement or they did not. If plaintiff can prove an enforceable contract, then it will be able to recover under the first cause of action. However, as is the situation with the second cause of action in quantum meruit, a claim for an account stated may not be utilized simply as another means to attempt to collect under a disputed contract. Concur—Sullivan, J. P., Milonas, Rosenberger, Ellerin and Rubin, JJ.