Gary Joseph GRAPPO, Plaintiff–Appellant,

v.

ALITALIA LINEE AEREE ITALIANE, S.p.A. and Gianfranco Bianchi, Defendants–Appellees.

No. 1073, Docket 94–7767.

United States Court of Appeals, Second Circuit.

Submitted Jan. 13, 1995.

Decided May 31, 1995.

428

William L. Barish, Mt. Kisco, NY, for plaintiff-appellant.

J. Joseph Bainton, Ross & Hardies, New York City (John G. McCarthy, of counsel) for defendants-appellees.

Before: KEARSE, McLAUGHLIN, and CABRANES, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Gary Joseph Grappo filed suit in the United States District Court for the Southern District of New York (Charles L. Brieant, *Judge*) against his employer, Alitalia Linee Aeree Italiane, S.p.A., an airline owned by the Republic of Italy. Grappo alleged that Alitalia breached its agreement to buy his copyrighted customer service training program. He sued for breach of contract and quantum meruit, as well as unpaid wages. Grappo also sought damages against a corporate officer of Alitalia for fraud. Alitalia counterclaimed for overpaid wages.

The district court granted summary judgment to Alitalia and declined to retain jurisdiction over Grappo's claim for unpaid wages and Alitalia's counterclaim for overpaid wages. It also denied Grappo's request for additional discovery pursuant to Fed.R.Civ.P. 56(f). Grappo appeals. For the reasons that follow, we reverse.

## BACKGROUND

Gary Joseph Grappo is a citizen of New York. The airline, Alitalia Linee Aeree Italiane, S.p.A., is a foreign corporation owned by the Republic of Italy. Its principal place of business is in Rome. Gianfranco Bianchi, an Italian citizen, is the personnel manager for Alitalia's North American operations, with headquarters in New York. Not surprisingly, there are two versions of the facts.

According to Grappo, Alitalia hired him in March, 1992 to work in its New York office implementing a customer service program that it intended to buy from Systema Corporation, a consulting firm specializing in employee training. The cost of the program was at least $250,000. Bianchi was to supervise Grappo in this endeavor.

Coincidentally, Grappo happened to be the author and copyright holder of his own customer service training program registered under the names "Guest*Star" and "People Come First" (hereinafter "Guest*Star"). Like Systema Corporation's program, Grappo's program, consisting of manuals and other materials, also sought to teach employees how to offer better service to customers. Grappo had begun licensing his program to various corporations in 1988.

Alitalia concluded that the Systema program was too expensive, and rejected it. Bianchi then approached Grappo about his own training program. Encouraged by what he heard, Bianchi arranged for Grappo to present his program in Rome to senior Alitalia officials. Based on this presentation, Alitalia decided to purchase from Grappo a non-exclusive license to use the Guest*Star program to train its employees. Although never reduced to a writing, a firm agreement be-

tween Bianchi, representing Alitalia, and Grappo took shape over the following months.

First, in June 1992, Bianchi advised Grappo that Alitalia had decided to purchase Guest*Star. He subsequently directed Grappo in a hand-written memo to "[t]ailor the 'Guest Star' program for Alitalia needs and goals." Bianchi told Grappo that he would finalize the price and other contract terms when Alitalia officials returned from their summer vacations. Grappo spent $1,000 of his own money carrying out Bianchi's instructions to customize Guest*Star for Alitalia.

Several months later, the executive committee of Alitalia's North American managers approved Grappo's work-in-progress. Bianchi and Grappo then completed final negotiations. Bianchi promised that Alitalia would pay Grappo $50,000 for a non-exclusive license to use Guest*Star as soon as Grappo finished tailoring Guest*Star to Alitalia's needs. Bianchi and Grappo also agreed that Alitalia would use the program at its 105 locations, credit Grappo as the author, and give him a promotion. Bianchi told Grappo that senior officials in Rome had approved this deal.

Alitalia did, in fact, promote Grappo. A letter dated November 13, 1992 and signed by Bianchi and Alitalia's General Manager for the United States and Mexico informed Grappo that "upon the Company's decision to implement the Customer Service Program, effective November 16, 1992 you are appointed to Training and Development Manager, Category I."

Grappo finished tailoring the Guest*Star program in January 1993. It was given the name "Customers Come First." Training manuals containing Grappo's copyright notice were distributed to Alitalia's North American managers and others. A letter from Alitalia's General Manager for North America accompanied the manuals, emphasizing the importance of employee support for "Customers Come First." When Grappo's agent sent Alitalia a bill for $50,000, however, Alitalia did not pay it, even though the company had budgeted $50,000 for the training program.

Although Alitalia distributed the training manuals to its managers, it never implemented Grappo's program. Instead, it used a training program written by Irene Dinola, Alitalia's Training Director, whose office is in Rome. At Bianchi's instruction, Grappo had provided Dinola with copies of his program while he was customizing it for Alitalia. Dinola's program was based, without credit, on Grappo's work. In fact, at Bianchi's direction, Grappo reviewed Dinola's work to verify that it embodied all his ideas. Grappo resigned from Alitalia in July, 1993.

Of course, Alitalia has a different version of these events. It maintains that there was never any agreement, "written or oral," for Alitalia to purchase Guest*Star. Instead, it contends that its negotiations with Grappo involved only "preliminary approval for the possible use" of Guest*Star. For example, Alitalia states that its senior executives gave only "preliminary approval" to Guest*Star after hearing Grappo's presentation (which, according to Alitalia, took place in New York, not Rome). Thereafter, Bianchi instructed Grappo to tailor Guest*Star to Alitalia's needs, "should Alitalia agree to purchase" the program. Alitalia also maintains that it promoted Grappo in anticipation of the "possible use" of his program, and that Bianchi promised to propose to senior management that Grappo be paid $50,000, "if Alitalia decided to implement his program." Alitalia asserts that it set aside $50,000 "in the event that Alitalia decided to purchase a non-exclusive license to use Grappo's training program." In the end, according to Alitalia, it simply decided to reject Grappo's proposal in favor of the program developed independently by Dinola.

Grappo sued Alitalia in the United States District Court for the Southern District of New York for breach of its agreement "to purchase a non-exclusive license to use Guest*Star." He sought damages for breach of contract and quantum meruit, as well as unpaid wages. Grappo also sought damages against Bianchi, personally, for fraud. Alitalia counterclaimed for overpaid wages.

The district court granted Alitalia's motion for summary judgment, holding that, because

the alleged agreement was not in writing, Grappo's contract claims were barred by the Statute of Frauds contained in § 1–206 of the New York Uniform Commercial Code. It further held that Grappo's quantum meruit and fraud claims failed because a plaintiff whose contract claim is barred by the Statute of Frauds may not "come in the back door" by suing for quantum meruit or fraud. The court declined to exercise jurisdiction over Grappo's claim for unpaid wages as well as Alitalia's counterclaim for overpaid wages, both of which it characterized as "pendent" claims. The court also denied Grappo's request for additional discovery pursuant to Fed.R.Civ.P. 56(f). Grappo appeals.

## DISCUSSION

■ When reviewing a district court's grant of summary judgment, this Court determines *de novo* whether there are genuine issues of material fact, and whether the moving party is entitled to judgment as a matter of law. *See, e.g., Arica Institute, Inc. v. Palmer*, 970 F.2d 1067, 1071 (2d Cir.1992). We draw all inferences in favor of the non-moving party, and affirm only when no reasonable trier of fact could have found for the non-moving party. *Id.* at 1071–72.

### I. *Contract claims*

Grappo's complaint contains two causes of action for breach of contract. In the first, he claims that Alitalia owes him $50,000 for a "non-exclusive license" to use Guest*Star, of which he "is the author and copyright holder." His second contract claim seeks $150,-000 in damages for Alitalia's failure to implement the program and to credit him as the creator.

■ Section 1–206(1) of the New York Uniform Commercial Code provides that

a contract for the sale of personal property is not enforceable by way of action or defense beyond five thousand dollars in amount or value of remedy unless there is some writing which indicates that a contract for sale has been made between the parties at a defined or stated price, reasonably identifies the subject matter, and is

signed by the party against whom enforcement is sought or by his authorized agent.

The accompanying Official Comment indicates that § 1–206 applies to the sale of "general intangibles" as defined in § 9–106. *See* Official Comment, U.C.C. § 1–206 (McKinney 1993). The term "general intangibles" includes "literary rights, copyrights, trademarks, [and] patents." New York Annotations, U.C.C. § 9–106, at 331 (McKinney 1990). *See also* Official Comments, U.C.C. § 1–206 (McKinney 1993) ("general intangibles" include "royalty rights or the like"). Thus, § 1–206 governs the contract between Grappo and Alitalia. *See, e.g., Mellencamp v. Riva Music Ltd.*, 698 F.Supp. 1154, 1163 (S.D.N.Y.1988) (§ 1–206 applies to oral agreement to transfer copyright).

■ Because there was no writing between Grappo and Alitalia, Grappo's contract claims are unenforceable under § 1–206 "beyond five thousand dollars." The question remains, however, whether Grappo's claims are enforceable *up to* five thousand dollars, or whether § 1–206 renders an oral contract over $5,000 totally unenforceable.

The district court apparently took the latter view, since it dismissed both of Grappo's contract claims in their entirety. We believe that the plain words of § 1–206—"a contract for the sale of personal property is not enforceable ... beyond five thousand dollars ... unless there is some writing"—permit the plaintiff to recover up to $5,000 on an oral contract. If the thrust of the statute was to bar recovery *in toto*, then the phrase, "beyond five thousand dollars" should immediately follow the words "a contract for the sale of personal property." As drafted, the statute permits a plaintiff to recover up to $5,000 on an oral contract that should have been in writing.

The only New York authority we have been able to locate agrees. *See Beldengreen v. Ashinsky*, 139 Misc.2d 766, 528 N.Y.S.2d 744, 747–48 (N.Y.Civ.Ct.1987) (under § 1–206, oral contract claims over $5,000 are enforceable without a writing, but only up to $5,000); *see also Felicie, Inc. v. Leibovitz*, 67 A.D.2d 656, 657–58, 412 N.Y.S.2d 625, 627 (1st Dep't 1979) (Silverman, *J.*, concurring) (same). As noted in *Beldengreen*, two cases

interpreting New York law have also reached the same conclusion. *See Olympic Junior, Inc. v. David Crystal, Inc.,* 463 F.2d 1141, 1144–45 (3d Cir.1972); *California Natural, Inc. v. Nestle Holdings, Inc.,* 631 F.Supp. 465, 471 (D.N.J.1986).

Of course, under elementary res judicata principles, plaintiff's contract claims would merge in his $5,000 judgment, and he would be barred from recovering the balance. *See, e.g.,* Restatement (Second) of Judgments § 18 (1982); *Ritchie v. Landau,* 475 F.2d 151, 156 (2d Cir.1973). Grappo struggles to avoid this result by recasting his agreement with Alitalia as something other than a contract for the sale of personal property. We turn to these arguments, assuming, without deciding, that the district court retains jurisdiction over Grappo's contract claims, notwithstanding that we have limited them to $5,000. *See* Part IV, *infra* (discussing 28 U.S.C. § 1330(a)).

■ Relying on *Schenectady Steel Co. v. Bruno Trimpoli General Construction Co.,* 43 A.D.2d 234, 350 N.Y.S.2d 920 (3d Dept.), *aff'd,* 34 N.Y.2d 939, 316 N.E.2d 875, 359 N.Y.S.2d 560 (1974), Grappo first argues that the contract was principally one for services (tailoring Guest*Star), not for the sale of personal property, and thus not subject to the Uniform Commercial Code at all. In *Schenectady Steel,* the court held that an agreement by a contractor to "furnish and erect the structural steel" for a bridge was a contract for services not subject to the Code. The court reached that conclusion because the buyer "was not contracting simply for the steel beams but in essence for their erection and installation with the transfer of the title to the steel a mere incident of the overall transaction, a mere accessory to the work and labor to be performed." *Id.* at 237, 350 N.Y.S.2d at 923.

Here, "title" to Guest*Star was hardly "a mere incident" of Grappo's contract with Alitalia; it was its heart and soul. Without a license to use Guest*Star, the contract would have been useless to Alitalia. While Grappo may have tailored the program to Alitalia's needs, those efforts were plainly secondary to the contract. As Grappo himself states in his complaint, the contract was for a non-

exclusive license to use Guest*Star. Indeed, the $50,000 invoice Grappo sent to Alitalia specified that Alitalia had been granted a "non-exclusive, unlimited license" for "Customers Come First," the customized version of Guest*Star.

■ Alternatively, Grappo argues that the contract was not for the sale of personal property (governed by § 1–206) but for the sale of "goods" (training manuals and materials) under § 2–201, and the invoice he sent Alitalia satisfies the requirement of a writing between merchants. *See* § 2–201(2). We reject this argument for the same reason that we reject the proposition that the alleged contract was one for services: the sale of a non-exclusive license for copyrighted material was the core of the contract. The manuals would have been useless to Alitalia absent a legal right to use them.

■ Undeterred, Grappo further contends that, even if his contract with Alitalia was for the sale of personal property within the meaning of § 1–206, the Statute of Frauds should not operate against him because there was a fiduciary relationship between him and his employer. *See, e.g.,* 61 N.Y.Jur.2d, Statute of Frauds § 296 ("[T]he statute will not afford protection where there has been a reliance upon, and abuse of, a confidential relationship. . . ."). At the time of the alleged agreement, however, Grappo was an at-will employee. Accordingly, Alitalia owed him no fiduciary duty. *See, e.g., Budet v. Tiffany & Co.,* 155 A.D.2d 408, 547 N.Y.S.2d 81, 82 (2d Dep't 1989) (employer owes no fiduciary duty to at-will employee). Grappo simply has not alleged the type of relationship with Bianchi that gives rise to fiduciary duties. *See, e.g., Apple Records, Inc. v. Capitol Records, Inc.,* 137 A.D.2d 50, 57–58, 529 N.Y.S.2d 279, 283 (1st Dep't 1988) (fiduciary duty arose from a 25–year business relationship); *Penato v. George,* 52 A.D.2d 939, 942, 383 N.Y.S.2d 900, 904–05 (2d Dep't 1976) (joint venture could give rise to fiduciary duty), *appeal dismissed,* 42 N.Y.2d 908, 366 N.E.2d 1358, 397 N.Y.S.2d 1004 (1977).

■ Finally, Grappo argues that Alitalia should be estopped from relying on the Statute of Frauds. Estoppel has been recog-

nized in a "limited class of cases" where application of the Statute of Frauds would be unconscionable. *Philo Smith & Co. v. US-LIFE Corp.*, 554 F.2d 34, 36 (2d Cir.1977) (applying New York law). "The strongly held public policy reflected in New York's Statute of Frauds would be severely undermined," however, "if a party could be estopped from asserting it every time a court found that some unfairness would otherwise result." *Id.* On the facts alleged by Grappo, we see no indication that Alitalia caused him "to irremediably alter his situation" such that "the interposition of the statute against performance [would constitute] a fraud." *Woolley v. Stewart*, 118 N.E. 847, 848, 222 N.Y. 347, 350–51 (1918).

## II.  *Quantum meruit*

Grappo's third claim seeks $200,000 in quantum meruit "as the reasonable value of his work and services." The district court dismissed the claim because "under New York law the person who is disappointed for lack of a memorandum can't come in the back door and claim more than the contract price as quantum meruit." We disagree.

It is true, under New York law, that a plaintiff may not escape the Statute of Frauds by simply affixing the label "quantum meruit" to the very contract claim that is barred. *See Farash v. Sykes Datatronics, Inc.*, 59 N.Y.2d 500, 452 N.E.2d 1245, 1246, 465 N.Y.S.2d 917, 918 (1983). A cause of action does exist, however, where the plaintiff "merely seeks to recover for the value of the work performed," *id.*, 452 N.E.2d at 1246, 465 N.Y.S.2d at 918, as distinct from the contract price. This is because the cause of action does not depend upon an unenforceable promise; rather, it "is in disaffirmance of the void contract." *Id.* The nomenclature is not dispositive. *Id.* at 1248, 465 N.Y.S.2d at 920 ("Whether denominated 'acting in reliance' or 'restitution,' ... a promisee who partially performs ... at a promisor's request should be allowed to recover the fair and reasonable value of the performance rendered, regardless of the enforceability of the original agreement."). Because Grappo's third cause of action seeks compensation for "the reasonable value of his work and ser-

vices"—and not the benefit of his bargain—the claim is distinct from his claims under the contract, and should not have been dismissed.

Alitalia appears to argue that a plaintiff who is barred by the Statute of Frauds from enforcing an alleged contract may never seek recovery in quantum meruit. Alitalia relies on *Martin H. Bauman Associates, Inc. v. H & M International Transport, Inc.*, 171 A.D.2d 479, 567 N.Y.S.2d 404 (1st Dep't 1991). Its reliance is misplaced. In *Bauman*, the court rejected the plaintiff's quantum meruit claim because the plaintiff failed to specify the expenditures it made in reliance upon the defendant's representations, as well as the reasonable value of the services performed. Instead, the plaintiff "merely assert[ed] in a conclusory, non-specific manner" that it had performed services for the defendant, and demanded the *contract price*. *Id.* at 484, 567 N.Y.S.2d at 408. Understandably, the court found the plaintiff's quantum meruit claim "indistinguishable" from its breach of contract claim. *Id.* It did not hold, however, that recovery in quantum meruit is never available to a plaintiff who is barred by the Statute of Frauds from enforcing an alleged contract.

Alitalia also argues that Grappo, as an employee of Alitalia, has already been compensated for the time he spent revising Guest*Star, since he performed most of the project during his work day. At least one New York court has rejected that argument, holding that an employee may seek recovery against his employer, notwithstanding that the employee's "invention" took shape on company time. *See Ross v. F.E.I., Inc.*, 150 A.D.2d 228, 231–32, 541 N.Y.S.2d 400, 403 (1st Dep't 1989). The purpose of permitting recovery is to prevent unjust enrichment. *See id.*

## III.  *Fraud claim*

Grappo's fourth claim is against *Bianchi* for (a) falsely stating that senior officials had approved the contract, and (b) defrauding him of his property by requiring him to turn over his work on Guest*Star to Irene Dinola and another Alitalia official from corporate

headquarters in Rome. The district court dismissed the claim. This was error.

■ A cause of action for fraud does not generally lie where the plaintiff alleges only that the defendant entered into a contract with no intention of performing. *See, e.g., Guterman v. RGA Accessories, Inc.*, 196 A.D.2d 785, 786, 602 N.Y.S.2d 116, 117 (1st Dep't 1993); *Kotick v. Desai*, 123 A.D.2d 744, 745–46, 507 N.Y.S.2d 217, 219 (2d Dep't 1986). "Actionable relief hangs on breach; ... relief does not lie for fraud resting on an intention not to perform." *Briefstein v. P.J. Rotondo Constr. Co.*, 8 A.D.2d 349, 351, 187 N.Y.S.2d 866, 868 (1st Dep't 1959). A fraud action *is* permitted, however, where the plaintiff alleges that the defendant engaged in other fraudulent conduct besides entering the contract with no intention to perform. *See, e.g., Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 792–95 (2d Cir.1986) (interpreting New York law); *Lehman v. Dow Jones & Co.*, 783 F.2d 285, 294–96 (2d Cir.1986) (Friendly, *J.*) (same).

■ Grappo's fourth claim is not limited to an allegation that Bianchi, acting for Alitalia, entered into a contact never intending to perform. Grappo alleges that Bianchi engaged in fraud independent of the contract by reporting that the contract had been approved, when he knew that it had not; and by purloining Guest*Star. Accordingly, Grappo's fraud claim is distinct from his claims under the contract, and should not have been dismissed.

■ Bianchi argues that, as a corporate employee, he is somehow immune from Grappo's fraud claim. He is mistaken. Immunity extends to officers or employees who induce their corporation to breach a contract. *Citicorp Retail Services, Inc. v. Wellington Mercantile Services, Inc.*, 90 A.D.2d 532, 533, 455 N.Y.S.2d 98, 99 (2d Dep't 1982). It does not extend to employees who commit fraud. *See, e.g., Model Imperial Supply Co. v. Westwind Cosmetics, Inc.*, 808 F.Supp. 943, 946 (E.D.N.Y.1992) (interpreting New York law); *Bailey v. Diamond Int'l Corp.*, 47 A.D.2d 363, 367, 367 N.Y.S.2d 107, 111 (3d Dep't 1975). Bianchi, therefore, enjoys no personal immunity for any fraud he may have committed.

### IV. *Unpaid and overpaid wages*

■ The district court dismissed both Grappo's claim for unpaid wages and Alitalia's counterclaim for overpayment of wages on the ground that they were "pendent" claims. Grappo does not appeal the dismissal of his claim, and consequently, it is not before us.

Alitalia, for its part, asserts that neither Grappo's claim nor its counterclaim was "pendent" because the court had jurisdiction over the claims pursuant to 28 U.S.C. § 1330(a) ("The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state...."). *See also* 28 U.S.C. § 1603 (definition of foreign state includes a corporation owned by a foreign government); 28 U.S.C. § 1605(a) (foreign sovereign immunity does not extend to "commercial activity carried on in the United States by the foreign state"). Alitalia, however, neither appealed nor cross-appealed from the dismissal of its counterclaim.

Because neither party appealed the dismissal of its claim, and without the benefit of full briefing, we decline to address the jurisdictional issue. On remand, the district court is free to reconsider its disposition of the two claims.

### V. *Discovery*

Grappo argues that discovery in this case, consisting thus far only of some document production, is incomplete. He alleges that Alitalia withheld documents which "may satisfactorily confirm the disputed agreement." In addition, he argues that he should be permitted to depose several Alitalia officials he claims know about the disputed agreement. The officials have signed affidavits disclaiming knowledge of any contract.

The district court refused to permit additional discovery, presumably because there was no writing to satisfy the Statute of Frauds and because the court believed Grappo's other claims to be barred. In light of our disposition of this case, further discovery,

including document production and depositions, is warranted.

## CONCLUSION

In sum, we reverse the district court's dismissal of Grappo's contract claims under New York Uniform Commercial Code § 1–206, and his quantum meruit and fraud claims. We express no opinion with respect to Grappo's claim for unpaid wages, and Alitalia's counterclaim for overpayment of wages. Further discovery is warranted.

The decision of the district court is REVERSED and REMANDED for further proceedings consistent with this opinion.