**GOULD PAPER CORPORATION,**
**Plaintiff,**

v.

**MADISEN CORP. and Amron Paper, Inc., Defendants.**

**No. 07 Civ. 6087 (DC).**

United States District Court, S.D. New York.

May 15, 2009.

---

Law Offices of Jack Hassid, by Jack Hassid, Esq., New York, NY, for Plaintiff.

Silverberg & Associates, P.A., by Paul K. Silverberg, Esq., Weston, FL, for Defendants.

## MEMORANDUM DECISION

CHIN, District Judge.

Plaintiff Gould Paper Corporation ("Gould") brings this action for breach of contract against defendants Madisen Corp. ("Madisen") and Amron Paper, Inc. ("Amron") asserting that they have refused to return excess commissions they received in error while working as independent contractors for Gould. Madisen and Amron counterclaim that Gould has wrongfully withheld commissions that were rightfully earned. Defendants assert five counterclaims against Gould: 1) breach of contract; 2) violation of New York Labor Law § 191–c; 3) common law fraud; 4) conversion; and 5) abuse of process. Gould moves for summary judgment, pursuant to Federal Rule of Civil Procedure 56, dismissing all of defendants' counterclaims. Defendants cross-move for summary judgment on their New York Labor Law counterclaim. For the following reasons, Gould's motion for summary judgment is granted dismissing the counterclaims alleging a violation of New York Labor Law § 191–c, common law fraud, conversion, and abuse of process. Gould's motion for summary judgment on the breach of contract counterclaim is denied. Defendants' cross-motion for summary judgment in its favor on their New York Labor Law counterclaim is denied.

## BACKGROUND

### A. Facts

The facts in this case are largely undisputed. Factual disputes have been resolved in defendants' favor.

Gould is a New York corporation that sells paper in one of two ways: (1) by arranging direct shipments from a paper mill to its customers ("mill direct" sales) or (2) by selling paper from its own inventory ("warehouse" sales). (Matthews Decl. ¶ 3).[1] Gould sells its product through commissioned sales representatives. (Id. at ¶ 7). The sales representatives are either employees of Gould or independent contractors. (Id.).

Gould's Policy Manual (the "Manual") governs the relationships among Gould, the sales representatives, and the customers. (Id.). The Manual provides for certain deductions and charges against a salesperson's commissions ("chargebacks"), in various situations. (Id. at ¶¶ 7–8). For example, the Manual provides that Gould may chargeback a salesperson's commissions to compensate for overdue, reduced, or incomplete payments by the salesperson's customers. (Id. at ¶¶ 8–10). If the payment is subsequently recovered, the Manual provides that the salesperson's commission will be reimbursed at his appropriate commission rate. (Huempfner Decl. ¶ 12).

Alex Gomez began his employment at Gould in 1992. (Matthews Decl. ¶ 5). Gomez became an independent contractor when he formed Madisen in 2003. (Id.). John Huempfner was hired by Gould in 1998. (Id. at ¶ 6). Like Gomez, Huempfner became an independent contractor when he formed Amron in 2003. (Id. at ¶ 6). Gomez and Huempfner, working through their corporations, defendants Madisen and Amron respectively, worked

---

1. Defendants argue, in their opposition brief, that the Matthews declaration should be stricken as hearsay. Because I conclude that Matthews's position as Executive Vice President and Chief Financial Officer of Gould renders him competent to testify as to the facts of this case and his declaration is based on personal knowledge, defendants' request is denied. *See Bruchman v. Standard Chartered Bank, PLC,* 997 F.Supp. 481, 487 (S.D.N.Y. 1998).

out of Gould Paper Florida ("GPF"). (*Id.* at ¶ 13). GPF is a separate, unincorporated division based in Florida that serves customers there and in the Carribean. (*Id.*). Gomez and Huempfner "essentially managed [GPF's] day-to-day operations." (*Id.*). Gomez and Huempfner also had customers in the New York area, specifically Case–Hoyt and Earth Color Group located in Long Island and Manhattan. (Huempfner Decl. ¶¶ 3–4).

At the time of Gomez and Huempfner's initial employment with Gould, GPF dealt exclusively in mill direct sales. (Matthews Decl. ¶ 14). In November 2002, Gomez and Huempfner recommended that Gould purchase a warehouse for GPF to maintain its own inventory and thereby stock paper ready for immediate delivery to its customers. (*Id.* at ¶ 16). Accordingly, Gould rented a warehouse in Medley, Florida, sales from which were designated as warehouse sales. (*Id.*).

By March 30, 2005, GPF had lost nearly $40,000 for the year. (*Id.* at ¶ 17). On April 1, 2005, Gould executives met with Gomez and Huempfner in New York to discuss changes to GPF's operations. (*Id.* at ¶ 18; Huempfner Decl. ¶ 9). The parties orally agreed to set Gomez's and Huempfner's commission rates at 40% for mill direct sales and 30% for warehouse sales to reflect the additional costs Gould incurred by carrying and warehousing the GPF inventory. (Matthews Decl. ¶ 18; Huempfner Decl. ¶ 10).

On June 16, 2006, Gomez and Huempfner resigned from Gould. (Matthews Decl. ¶ 20). Subsequently, both Gould and defendants discovered discrepancies with defendants' commissions. Gould claims that many of the sales defendants made after April 1, 2005 were improperly classified for accounting purposes as mill direct rather than warehouse sales. (*Id.*). As a result, Gould argues that defendants re-

ceived substantial excess commissions. (*Id.*). Defendants claim that Gould failed to reimburse them for chargebacks deducted from their commissions but subsequently recovered by Gould. (Huempfner Decl. ¶ 12). Accordingly, defendants argue that Gould wrongly withheld their commissions.

### B. *Procedural History*

Gould filed a complaint in this Court on June 28, 2007, seeking damages against Gomez in the amount of $99,111.17 and against Huempfner in the amount of $112,714.62, plus interest. (Compl. at ¶ 41). On August 14, 2007, Gomez and Huempfner moved to dismiss the complaint for forum non conveniens or to transfer the case to Florida. On January 11, 2008, I denied the motion on both grounds. *Gould Paper Corp. v. Gomez*, No. 07 Civ. 6087(DC), 2008 WL 113900 (S.D.N.Y. Jan. 11, 2008).

On February 11, 2008, Gould filed an amended complaint substituting Gomez and Huempfner as defendants with Madisen and Amron. On March 11, 2008, defendants answered the amended complaint and asserted five counterclaims.

The parties completed discovery, and these motions followed.

### DISCUSSION

Gould moves for summary judgment dismissing all five of defendants' counterclaims. Defendants cross-move for summary judgment in their favor on the labor law claim. I discuss each claim in turn. For the following reasons, Gould's motion for summary judgment is granted in part and denied in part. Defendants' motion for summary judgment is denied.

### A. *Summary Judgment Standard*

The standards governing motions for summary judgment are well-settled. A

court may grant summary judgment only where there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law. *See* Fed R. Civ. P. 56(c); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Summary judgment should be denied "if the evidence is such that a reasonable jury could return a verdict" in favor of the non-moving party. *See NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 178–79 (2d Cir.2008).

In deciding a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir.2008). The non-moving party cannot, however, "escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (internal citations and quotations omitted).

### B. *Breach of Contract*

■ Defendants assert that Gould breached the Manual by failing to reimburse them for chargebacks subsequently recovered by Gould. Gould argues that the breach of contract claim—and all other claims—should be dismissed for failure to disclose damages pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(iii). Defendants counter that they provided "at least, seventeen (17) statements as part of [their] initial disclosure in print and on Compact Disc. These documents consisted of approximately six hundred and twenty-nine pages (629) which document and detail the basis for the damage claim." (Def. Opp.

Mem. at 5). The documents produced by defendants, however, do not satisfy the Rule 26 requirement that defendants provide "a computation of each category of damages claimed."

Peculiarly, defendants argue that they have not detailed their claim for damages because "the complete amount of damages is a calculation which must be determined by an expert." (Def. Opp. Mem. at 6; Huempfner Decl. ¶ 15). In essence, defendants concede they did not provide a damages computation, and it is simply too late for them to do so now. All discovery—fact and expert—closed in this case on December 18, 2008. The motions for summary judgment followed. Defendants may not use an expert at some point in the future to prove damages because they did not provide a damages calculation or disclose an expert witness during discovery, as required. Defendants, therefore, are precluded from proving damages. *See* Fed. R.Civ.P. 37(c)(1); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir.2006) ("By its very terms Rule 26(a) requires more than providing—without any explanation—undifferentiated financial statements; it requires a 'computation,' supported by documents."); *24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 566 F.Supp.2d 305, 318 (S.D.N.Y.2008) (theory of damages precluded because plaintiff failed to make mandatory initial disclosure).

■ Summary judgment dismissing the breach of contract claim is denied, however, because defendants may be entitled to recover nominal damages. *See, e.g., Tradex Europe SPRL v. Conair Corp.*, No. Civ. 1760(KMW), 2008 WL 1990464, at *5 (S.D.N.Y. May 7, 2008) (denying summary judgment because although defendants proved that plaintiffs were precluded from recovering "actual direct damages and consequential damages on their breach of contract claim, [they] fail[ed] to address

whether Plaintiffs may nevertheless recover nominal damages."); *Goldblatt v. Englander Comm'ns, L.L.C.,* No. 06 Civ. 3208(RWS), 2007 WL 148699, *4 (S.D.N.Y. Jan. 22, 2007) (citing cases). At trial, defendants may only seek nominal damages—$1.00. The remaining four counterclaims are dismissed for the reasons discussed below.

## C. *Labor Law Claim*

Defendants claim that Gould violated New York Labor Law § 191–c by withholding chargebacks to their commissions that were subsequently recovered by Gould. Gould argues that defendants cannot bring a claim under New York Law Labor § 191 because they fail—in two respects—to satisfy the statute: First, even if there was a violation of an agreement, it was an oral agreement, not a written one; second, defendants do not qualify as "sales representatives" under the statute because they did not solicit orders from within New York. Defendants cross-move for summary judgment, asserting that Gould violated the written Manual and defendants had customers in New York. For the following reasons, defendants' motion is denied and Gould's motion is granted.

### 1. *New York Labor Law*

New York Labor Law § 191–b governs contracts between principals and sales representatives. N.Y. Labor Law § 191–b (McKinney 2002). Under the statute, sales representatives are to be paid their earned commissions in accordance with a written contract, but not later than five days after the commission has been earned. If a principal violates § 191–b, § 191–c provides for double damages, in addition to fees and costs. "[B]oth provisions must be read in light of § 191–a, which defines the term 'sales representative.'" *Derven v. PH Consulting, Inc.,*

427 F.Supp.2d 360, 369 (S.D.N.Y.2006). Per the statute, a sales representative is an independent contractor who "solicits orders in New York state." N.Y. Labor Law § 191–a(d) (McKinney 2002).

### 2. *Defendants Do Not Meet The Statutory Requirements*

■ Gould argues that defendants' claim of a violation of New York Labor Law § 191–c cannot stand because it is based on a breach of the oral agreement reached on April 1, 2005. Oral agreements are not covered by § 191–c. *See Levine v. Zadro Prods., Inc.,* No. 02 Civ. 2838(GBD), 2003 WL 21344550, at *6 (S.D.N.Y. June 9, 2003). Defendants argue that Gould violated the commission rates and payment schedule set out by both the Manual and the April 1, 2005 oral agreement. Because the Manual is written, defendants argue that the violation falls under the statute. This factual dispute does not preclude summary judgment, however, because even assuming that Gould violated the written agreement, defendants cannot satisfy the statute.

■ Defendants have failed to produce any evidence from which a reasonable jury could conclude that defendants solicited business in New York. *See McCoy Assocs., Inc. v. Nulux, Inc.,* 218 F.Supp.2d 286, 293 (E.D.N.Y.2002) ("[T]he fact that McCoy Associates sold products to New York customers does not mean that it solicited business here. Obviously, there is a difference between the solicitation of a sale and the sale itself; it is certainly possible to sell something without soliciting its sale."). Defendants merely argue that they had customers in New York. (*Id.* ¶ 4; Def. Opp. at 8). Even assuming defendants had customers in New York, however, would not be enough; defendants must have actually solicited the orders in New York. *See Kaye v. Artmatic Corp.,* 214

A.D.2d 473, 474, 625 N.Y.S.2d 216 (1st Dep't 1995) ("We note that the statute should be interpreted with an emphasis placed on the whether the [sales representative] solicited orders from New York and not upon the location of the customers.").

Moreover, defendants have not provided any evidence from which a reasonable jury could find that they indeed had customers in New York during the relevant time period. Defendants' only evidence is Huempfner's deposition testimony—which was not provided to the Court as an exhibit, but only quoted in defendants' brief— and declaration stating that defendants had customers in New York, specifically in Long Island and Manhattan. (Def. Reply at 2–3). Gould has submitted evidence showing that defendants neither shipped to nor billed to New York during the relevant time period. (Matthews Decl. Ex. I; Collins Decl. ¶¶ 2–3). Accordingly, there are no issues of material fact precluding summary judgment. A reasonable juror could not conclude that defendants were "sales representatives" under § 191–c. Thus, Gould's motion for summary judgment dismissing the New York Labor Law counterclaim is granted.

## D. *Fraud*

Defendants' fraud claim is based on two allegations: (1) Gould representatives misrepresented the intra-company mark-up system and (2) Gould failed to reimburse defendants for commissions they rightfully earned. Gould argues that defendants' fraud claim is without merit because defendants were aware of the internal mark-up system and the fraud claim is duplicative of the breach of contract claim. Construing the evidence in the light most favorable to defendants, a reasonable jury could not conclude that Gould engaged in fraudulent conduct.

### 1. *Common Law Fraud*

 To succeed on their counterclaim for common law fraud, defendants must prove: "(1) a misrepresentation or a material omission of material fact which was false and known by [Gould] to be false, (2) made for the purpose of inducing [defendants] to rely on it, and (3) justifiably relied upon by the [defendants], (4) who then suffered an injury as a result of such reliance." *City of New York v. Smokes–Spirits.Com, Inc.*, 541 F.3d 425, 454 (2d Cir.2008). A claim for fraud cannot stand where the only allegation is "that the defendant entered into a contract with no intention of performing." *Grappo v. Alitalia Linee Aeree Italiane, S.p.A.*, 56 F.3d 427, 434 (2d Cir.1995); *see also Guilbert v. Gardner*, 480 F.3d 140, 148 (2d Cir.2007). If the alleged fraud relates solely to breach of contract, "the mere addition of allegations of scienter does not give rise to a cause of action seeking damages for fraud." *Derven v. PH Consulting, Inc.*, 427 F.Supp.2d 360, 370 (S.D.N.Y.2006) (quotations omitted).

### 2. *The Fraud Claim is Dismissed*

Defendants' claim of common law fraud is dismissed as it is both meritless and duplicative of the breach of contract claim.

 Defendants initially alleged that, at the April 1, 2005 meeting, Gould representatives did not disclose that paper purchases from other Gould centers—Town Paper and Price and Pierce—were marked up and would negatively affect defendants' commissions. (Huempfner Decl. ¶ 11). Of note, defendants fail to argue in their opposition papers that Gould misrepresented internal mark-ups. The only mention of fraud as to internal mark-ups is a conclusory statement in Huempfner's declaration. Defendants have not come forward with any evidence that Gould—at the April 1, 2005 meeting—misrepresented or omit-

ted the mark-up system that would apply to defendants. Gould, however, has provided undisputed evidence showing that defendants were fully aware of the internal mark-ups. In Gomez's deposition testimony about the April 1, 2005 meeting, he explained that he disagreed with the policy of getting "no credit from those profit dollars (intra-company sales)." (Gomez Dep. 61–62). He also testified that he told the Gould executives that he disagreed with the mark-up policy but that "[t]hey didn't care." (*Id.*). At deposition, Huempfner also testified that he "understood there was a markup." (Huempfner Dep. 89–90). Accordingly, based on the record, a reasonable jury could find no evidence of fraud. To the contrary, defendants were aware of the mark-up system. There were no misrepresentations or omissions. Defendants cannot allege fraudulent conduct simply because they did not agree with Gould's policy.

The second basis for defendants' fraud claim—that Gould did not reimburse defendants their fair commissions—is simply a reiteration of the breach of contract claim. Defendants do not allege conduct other than Gould's failure to perform on their commission agreements. *See Grappo,* 56 F.3d at 434 (where there is a breach of contract claim, a fraud claim is only permitted "if the defendant engaged in other fraudulent conduct besides entering the contract with no intention to perform"). Accordingly, Gould's motion for summary judgment dismissing the fraud counterclaim is granted.

### E. *Conversion*

Defendants assert that Gould unlawfully withheld unpaid commissions that defendants had rightfully earned. Based on this argument, defendants assert a conversion claim against Gould. "Conversion occurs when a defendant exercises unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession." *LoPresti v. Terwilliger,* 126 F.3d 34, 41 (2d Cir.1997) (quotations omitted). A conversion claim, however, will not lie if it merely duplicates a breach of contract claim. *See Citadel Mgmt., Inc. v. Telesis Trust, Inc.,* 123 F.Supp.2d 133, 148 (S.D.N.Y.2000) (internal citations omitted) ("For a conversion claim to succeed in the context of a dispute regarding a contract, the breach of contract must result in some 'wrong' that is separately actionable."); *see also Newman v. Mor,* No. 08 CV 658(RJD)(CLP), 2009 WL 890552, at *4 (E.D.N.Y. Mar. 31, 2009) ("[A] cause of action for conversion will be dismissed if it is duplicative of a cause of action for breach of contract, even if a plaintiff meets all the elements of conversion."). This is the case here. The conversion claim is premised entirely on the breach of contract claim. Defendants have not identified any wrong that is separately actionable. Accordingly, the conversion counterclaim is dismissed.

### F. *Abuse of Process*

Gould also moves for summary judgment dismissing defendants' abuse of process claim. To succeed on a claim for abuse of process, a party must prove the following three elements: "(1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *Curiano v. Suozzi,* 63 N.Y.2d 113, 480 N.Y.S.2d 466, 469 N.E.2d 1324, 1326 (1984). "No action for abuse of process will lie premised merely upon the commencement of a civil action, even if such action is commenced with malicious intent." *I.G. Second Generation Partners, L.P. v. Duane Reade,* 17 A.D.3d 206, 207, 793 N.Y.S.2d 379 (1st Dep't 2005).

The record contains no evidence that Gould abused process by filing the instant lawsuit. Defendants have failed to provide the Court with any evidence that Gould intended to do harm without excuse or that process was used in a perverted manner. Defendants simply argue that the abuse of process claim has been adequately pled. As discovery is closed in this case, a well pled allegation is insufficient to preclude summary judgment, for defendants are obliged to come forward with evidence to support the counterclaim. They have not done so, and no reasonable jury could conclude that process was abused. Gould's motion for summary judgment dismissing the abuse of process counterclaim is granted.

### *CONCLUSION*

For the foregoing reasons, Gould's motion for summary judgment dismissing defendants' five counterclaims is granted in part and denied in part. Defendants' motion is denied. Defendants' counterclaims for violation of New York Labor Law 191–c, fraud, conversion, and abuse of process are dismissed. Defendants may proceed on their breach of contract counterclaim, but they may only request nominal damages of $1.00. The parties shall attend a pretrial conference on June 5, 2009 at 10:00 a.m.

SO ORDERED.