NATIONWIDE MERCHANT BANK LIMITED, Plaintiff,

v.

STAR FIRE INTERNATIONAL, Defendant.

STAR FIRE INTERNATIONAL, Third–Party Plaintiff,

v.

Usman MOHAMMED and Grind Stone Ltd., Third–Party Defendants.

No. 93 Civ. 7428 (PKL).

United States District Court, S.D. New York.

June 27, 1995.

Tashjian & Padian, New York City, Richard G. Tashjian, Gerald Padian, of counsel, for Nationwide Merchant Bank Ltd.

Novak & Juhase, New York City, Kim Steven Juhase, of counsel, for Star Fire Intern.

Usman Mohammed, Bridgeton, NJ, third-party defendant pro se.

## OPINION AND ORDER

LEISURE, District Judge:

Plaintiff in this action is Nationwide Merchant Bank Limited ("Nationwide"). Nationwide is a banking corporation organized under the laws of Nigeria, with its principal place of business in Lagos, Nigeria. Defendant is Star Fire International ("Star Fire"). Star Fire is a New York corporation engaged in the import-export business which transacts business with Nigerian companies on a regular basis. Third-party defendant is Usman Mohammed ("Mohammed").[1] Mohammed is a citizen of Nigeria,[2] and acts as a broker between United States and Nigerian companies. Nationwide asserts two causes of action against Star Fire—money had and received and unjust enrichment—seeking to recover the sum of $75,234.50 arising out of an alleged unauthorized wire transfer of funds from Nationwide to Star Fire.[3] Star Fire in turn alleges that if it is found liable to Nationwide, such liability was caused by the actions of Mohammed. This Court has sub-

---

1. Star Fire's third-party complaint also names Grind Stone Ltd. as a third-party defendant, but Grind Stone has never been served.

2. After the third-party complaint was filed, Mohammed became a citizen of the United States and the State of New Jersey.

3. Nationwide has not asserted a claim against Mohammed.

ject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

■ This Court conducted a bench trial in this action on June 19 and 20, 1995. This opinion sets forth the Court's findings of fact and conclusions of law, pursuant to Fed. R.Civ.P. 52(a). The parties have stipulated to most of the facts that gave rise to this action; these undisputed facts are recited in the Pre–Trial Order and are incorporated by reference herein. The critical factual issue for trial was whether Star Fire took the proceeds of the $75,234.50 wire transfer in good faith, without notice of the fraud. Having considered the evidence and arguments presented by the parties, the Court finds that Robert Bloom, Star Fire's representative in connection with the transaction at issue here, received the proceeds in bad faith, with notice of the fraud. *See Carrefour U.S.A. Properties Inc. v. 110 Sand Co.*, 918 F.2d 345, 347 (2d Cir.1990) (discussing New York's definition of "notice" for purposes of closely related holder-in-due-course rule: " 'To constitute notice of a claim or defense, the purchaser must have knowledge of the claim or defense or knowledge of such facts that his action in taking the instrument amounts to bad faith.' N.Y.U.C.C. § 3–304(7). The New York Court of Appeals has construed this section to mean that questions of notice are to be determined by a subjective test of actual knowledge rather than an objective test which might involve constructive knowledge. . . . Holders in due course are to be determined by the simple test of what they actually knew, not by speculation as to what they had reason to know, or what would have aroused the suspicion of a reasonable person in their circumstances.") (citation and internal quotation marks omitted). The Court further finds that Nationwide was, at worst, negligent in failing to prevent the fraud, *see* Deposition of Olumide Alabi, at 35 (The difference in signatures was "slight."); *id.* at 55 ("[T]he two signatures, they are very, very well, they are similar."); *id.* at 71 ("[A]t a glance, this looks like their signatures. . . . But . . . look[ing] very closely . . . there is a little bit of variation."); *compare* PX 9 (July 16, 1993 letter authorizing transfer; signers' signatures are forgeries) *with* PX 10 (August 6, 1993 letter confirming that

signatures on July 16, 1993 letter were forged; signers' signatures are genuine); and the Court finds that neither Nationwide's customer, nor Nationwide itself, was negligent in failing to report the fraud sooner than they respectively did, *see id.* at 70, 72 (Nationwide's customer picked up telexes concerning recent account activity on July 28, 1993 and notified Nationwide of the fraud on August 2, 1993); *id.* at 28–29 (Nationwide attempted to stop payment "[i]mmediately" upon receiving notice from its customer that the payment order was fraudulent); *cf. Bank of the United States v. Bank of Georgia*, 23 U.S. (10 Wheat.) 333, 6 L.Ed. 334 (1825) (delay of 19 days in discovering fraud gave "greater strength" to argument that recovery was barred by estoppel). These factual findings are dispositive of Nationwide's action against Star Fire, because Star Fire's arguments against recovery assume that Star Fire received the proceeds in good faith and that Nationwide or its customer was worse than negligent in failing to prevent or report the fraud.

■ Star Fire first relies on the "mistake of fact" doctrine. As the New York Court of Appeals has explained:

New York has long recognized the rule that "if A pays money to B upon the erroneous assumption of the former that he is indebted to the latter, an action may be maintained for its recovery. The reason for the rule is obvious. Since A was mistaken in the assumption that he was indebted to B, the latter is not entitled to retain the money acquired by the mistake of the former, *even though the mistake is the result of negligence. . . .*" This rule has been applied where the cause of action has been denominated as one for money had and received . . . for unjust enrichment or restitution . . . or upon a theory of quasi contract. . . . Where, however, the receiving party has changed its position to its detriment *in reliance upon the mistake so that requiring that it refund the money paid would be "unfair,"* recovery has been denied. . . . This rule has evolved into the mistake of fact doctrine. . . .

*Banque Worms v. BankAmerica Int'l*, 77 N.Y.2d 362, 366, 568 N.Y.S.2d 541, 543–44, 570 N.E.2d 189, 191–92 (1991) (citations omitted) (emphases added). Where the receiving party did not receive the money in good faith, however, even if it has given value for the money or disbursed it or transferred a portion of the money to a third person who is now insolvent, the receiving party cannot be considered to have changed its position "in reliance upon the mistake so that requiring it to refund the money would be unfair."

■ Star Fire also relies on the "discharge for value" rule. According to this rule:

> [A] creditor of another or one having a lien on another's property who has received from a third person any benefit in discharge of the debt or lien, is under no duty to make restitution therefor, although the discharge was given by mistake of the transferor as to his interests or duties, if the transferee made no misrepresentation and *did not have notice of the transferor's mistake.*

*Id.*, 77 N.Y.2d at 367, 568 N.Y.S.2d at 544, 570 N.E.2d at 192 (citation and internal quotation marks omitted) (emphasis added). However, one who has notice of the transferor's mistake, by definition, may not invoke the discharge for value rule.

■ Star Fire invokes the doctrine of estoppel, pursuant to which, "where one of two *innocent* persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it." *Bunge Corp. v. Manufacturers Hanover Trust Co.*, 31 N.Y.2d 223, 228, 335 N.Y.S.2d 412, 415, 286 N.E.2d 903, 905 (1972) (emphasis added). However, one who has notice of the acts of the third is not "innocent" in the matter.

■ The Court therefore concludes that Nationwide has established Star Fire's liability for the full amount of the transfer less any setoff to which Star Fire is entitled pursuant to Mohammed's payment to Nationwide in partial satisfaction of Nationwide's claim. With respect to the latter point, the Court finds that $7,000 is the full extent of the setoff to which Star Fire is entitled. Although Mohammed testified that his uncle transferred upwards of $20,000 to the Nigerian police, in partial satisfaction of Nationwide's claim, Mohammed gave conflicting testimony as to whether he was present when the transfer occurred, at one point flatly conceding that he was not present. The Court finds that Mohammed was not present and that his testimony on this point is therefore inadmissible hearsay. In any event, the Court would not credit the testimony to the extent that it indicated that more than $7,000 of Nationwide's claim has been satisfied. The amount of Star Fire's liability to Nationwide is therefore $68,234.50.

■ With respect to Star Fire's third-party action against Mohammed, there is no dispute that Mohammed is in default with respect to the third-party complaint, and Star Fire is therefore entitled to a default judgment against him. Concerning the extent of Mohammed's liability to Star Fire, the Court finds that Mohammed received in bad faith the $50,000 that Star Fire transferred to him and that he is therefore liable to Star Fire for that amount less the $7,000 that he paid to Nationwide in partial satisfaction of Nationwide's claim, resulting in a net liability of $43,000; Mohammed should not bear the loss associated with the $25,234.50 that Star Fire retained in bad faith. *See generally* Fed.R.Civ.P. 55(b)(2) (Court may conduct hearing with respect to damages in default judgment context.).

### CONCLUSION

Nationwide is entitled to judgment against Star Fire in the amount of $68,234.50. Star Fire is entitled to a default judgment against Mohammed in the amount of $43,000. Nationwide and Star Fire shall submit proposed forms of judgment consistent with this Order, within 25 days from the date of this Order.

**SO ORDERED.**