■ MARILYN HUNT, Individually and as Administrator of the Estate of EDWARD G. HUNT, Deceased, et al., Respondent, v DONALD R. HUNT et al., Appellants. [788 NYS2d 219]—

Rose, J. Appeal from an order of the Supreme Court (Tomlinson, J.), entered October 9, 2003 in Hamilton County, which partitioned jointly or commonly held property and awarded damages.

Edward G. Hunt (hereinafter decedent) and his brother, defendant Donald R. Hunt (hereinafter defendant), owned, either as joint tenants or tenants in common and in one instance with their spouses, six parcels of real property located in Hamilton County (hereinafter collectively referred to as the property). The property is largely undeveloped and used for recreation, but includes one parcel which defendants have improved and used as their primary residence for many years, another, known as the Hunt Pit, which decedent's corporation has used as a source of raw materials for its sand and gravel business, and a third that was once timbered by decedent. Although plaintiff and decedent commenced this RPAPL article 9 action seeking

partition of the property in 1992,* defendants did not appear and serve an answer seeking a one-half share of all profits from the property until 2000. However, this untimeliness was waived by plaintiff and decedent.

After a bifurcated trial, Supreme Court found that plaintiff and decedent and defendants each held a 50% interest in the Hunt Pit, and decedent and defendant each held a 50% interest in the other five parcels. Then, rather than partitioning each parcel, Supreme Court set $33,000 as the amount to be paid by plaintiffs to buy out defendants' interest in the Hunt Pit and distributed the five remaining parcels among the parties equally according to value. The court also awarded defendants $24,750 and $6,538.40 as their one-half shares of the value of the raw materials and timber removed by decedent. Defendants appeal, contending that Supreme Court erred in failing to divide each individual parcel, valuing the raw materials extracted from the Hunt Pit and denying them prejudgment interest.

Initially, we note that partition is an equitable remedy in nature and Supreme Court has the authority to adjust the rights of the parties so each receives his or her proper share of the property and its benefits (see Deitz v Deitz, 245 AD2d 638, 639 [1997]). Here, Supreme Court's decision not to physically divide each individual parcel was soundly based both on the parties' wishes as expressed at trial and the parcels' characteristics. In a thorough decision, Supreme Court noted that defendants had expressed their preference to sell their interest in the Hunt Pit to plaintiff and decedent. In light of this, and the court's finding that plaintiff and decedent had borne all of the costs of developing the Hunt Pit, we cannot agree that Supreme Court erred in either directing the sale of defendants' interest or calculating its value. Contrary to defendants' contention, which cites no case law, we also find nothing in the provisions of RPAPL 901 or 915 precluding the method of physical division used by Supreme Court to distribute the remaining five parcels. Rather, Supreme Court's distribution was equivalent to the division of a large piece of property into multiple parcels and then allocating the groups of parcels among the parties, a method we have approved in the past (see Schwartz v Meisner, 198 AD2d 634, 635 [1993]). Using the parcels' assessed valuations, Supreme Court carefully divided them among the parties to produce an equal division of value. Thus, we find no error in the equitable resolution reached by the court.

Turning next to the Supreme Court's valuation of the raw

---

* Decedent died during the pendency of this appeal and plaintiff, his wife, was substituted as administrator of his estate.

materials removed from the Hunt Pit and sold by decedent between 1997 and 2001, we note that the court specifically credited plaintiff's testimony in determining a value of $.25 per cubic yard for the materials removed by plaintiff. Although defendants' witnesses testified to market values for bank run gravel ranging from $4 to $7.20 per cubic yard, the record indicates that the raw materials extracted by decedent were not of a quality comparable to bank run gravel and required considerable processing before sale. Supreme Court also correctly took into account plaintiff's costs incurred in extracting the materials. Inasmuch as Supreme Court's calculations were sound and were clearly based on its assessment of credibility (*see e.g. Hunt v Hunt*, 222 AD2d 759, 761 [1995]), we find no basis to alter its award.

Nevertheless, we agree with defendants to the extent that they are entitled to prejudgment interest on their awards for timber and raw materials extracted from the parties' parcels. Although plaintiff's action seeks the equitable remedy of partition, defendants' counterclaim was for conversion or deprivation of an ownership right and is legal in nature (*see* CPLR 5001 [a]; *Owen v Lloyd*, 234 AD2d 679, 680 [1996]; *Axtell v Kurey*, 222 AD2d 804, 806 [1995], *lv denied* 88 NY2d 802 [1996]). Since the dates for the accrual of interest on the damages awarded to defendants cannot readily be ascertained from the record, we shall remit this matter to Supreme Court to either ascertain the date or set a reasonable intermediate date for each award (*see* CPLR 5001 [b]).

Mercure, J.P., Peters and Spain, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied defendants prejudgment interest; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.