Michael David NEWBRO, Plaintiff,

v.

Lance FREED and Judith Fisher
Freed, Defendants.

No. 03 Civ. 10308(PKC).

United States District Court,
S.D. New York.

Jan. 9, 2006.

Anthony Paduano, Leonard Weintraub, Paduano & Weintraub, L.L.P., New York, William R. Decoste, Morrison, Cohen, Singer & Weinstein, LLP, New York, NY, for Michael David Newbro.

Leonard Steiner, Steiner & Libo, Beverly Hills, CA, for Lance Freed, Judith Fisher Freed.

Ronald A. Nimkoff, Nimkoff Rosenfeld & Schechter, LLP, New York, NY, for Deborah Loeffler.

## MEMORANDUM AND ORDER

CASTEL, District Judge.

Plaintiff Michael David Newbro and defendants Lance Freed and Judith Fisher Freed each utilized Todd Eberhard, a now convicted thief, as their financial consultant. When the Freeds noticed an unaccounted shortfall in their account balance, they questioned Eberhard about the discrepancy. Eberhard told the Freeds that he had placed several trades on their behalf, but they were not yet reflected on the account statements. Thereafter, Eberhard transferred $1,120,000 from Newbro's account into the Freeds' accounts, thereby covering the shortfall. The direct transfer from Newbro's account into the Freeds' account is reflected on the face of both. parties' account statements. Neither Newbro nor the Freeds are alleged to have been knowing participants in Eberhard's crimes.

In a complaint filed December 31, 2003, Newbro brought suit against the Freeds on three legal theories: conversion, unjust enrichment and fraud. Jurisdiction is invoked by reason of diversity of citizenship and an amount in excess of the jurisdictional threshold. 28 U.S.C. § 1332. At an early stage of this proceeding, defendants moved to dismiss for lack of personal jurisdiction and also under Rule 12(b)(6), Fed. R.Civ.P., on the ground that, in their view, the claims for conversion and fraud failed to state a claim for relief. I granted the parties a sixty-day period to conduct discovery on the factual predicate for personal jurisdiction and denied defendants' motion to dismiss the two claims. *Newbro v. Freed,* 2004 WL 691392 (S.D.N.Y. Mar.31, 2004). I subsequently determined that there was a basis for personal jurisdiction over the Freeds under CPLR 302(a)(1). *Newbro v. Freed,* 337 F.Supp.2d 428 (S.D.N.Y.2004). I also denied the Freeds' motion to transfer the action to the Central District of California under 28 U.S.C. § 1404(a). *Id.*

Despite the asserted existence of legal theories that would permit Newbro to proceed against the Freeds, it remains the case that Newbro and the Freeds were victims of Eberhard's crimes. In view of the foregoing, this Court has encouraged efforts at compromise between the parties but to no avail. *See* Order of May 5, 2005.

Discovery is closed and the plaintiff has moved for summary judgment on two of this three claims: conversion and unjust enrichment. Defendants have moved for summary judgment dismissing the two claims on which the plaintiff has moved, as well as the third claim for fraud. Defendants also have moved to dismiss the complaint, pursuant to Rule 19(a), Fed.R.Civ. P., for failure to join an indispensable party—a trustee appointed pursuant to Securities Investor Protection Act of 1970 ("SIPA"), 15 U.S.C. § 78eee.

For the reasons explained below, I conclude that the trustee appointed pursuant to SIPA is not an indispensable party and that the plaintiff is entitled to summary judgment against the defendants on the conversion and unjust enrichment claims. The defendants are entitled to summary judgment dismissing the fraud claim.

*Facts*

For the purposes of these motions, I have accepted as true only those facts that have not been disputed. Where multiple inferences may be drawn from a fact, I have drawn only the inference most favorable to the non-movant.

Plaintiff and defendants maintained brokerage accounts that were managed by Todd Eberhard through Clearing Services of America, Inc. ("CSA"), a brokerage firm. The Pershing Division of Donaldson, Lufkin & Jenrette Securities Corporation ("Pershing") served as the clearing broker for the accounts plaintiff and defendants maintained with CSA. (Newbro Decl. ¶ 2; L. Freed Decl. ¶ 9) In April 2001, defendants noticed that over $1 million was missing from their CSA accounts. (L. Freed Decl. ¶ 17) When contacted by defendants, Eberhard told them that he had placed several trades on their behalf and that the funds would not reappear for some time. (J. Freed Decl. ¶ 3; L. Freed Decl. ¶ 17)

It is undisputed that, on July 25, 2001, Eberhard made two wire transfers out of Newbro's account and into accounts held by defendants. (Newbro Decl. ¶¶ 5–6; Def. Resp. to Pl. 56.1 ¶¶ 10–11) One transfer was for the even amount of $1 million and the second transfer was of $120,000. (Newbro Decl. ¶¶ 5–6; Def. Resp. to Pl. 56.1 ¶¶ 10–11) Eberhard accomplished the transfers through forged letters of authorization. (Newbro Decl. ¶ 8; Newbro Decl. Exs. D, E and F) Newbro's account statement reflected, "customer authorized transfers" to account "3HR–667916" and "3HR–652587", which are Freed-related account numbers. (Newbro Decl. Ex. B; Def. Resp. to Pl. 56.1 ¶¶ 10–11).

The account statement for one Freed account (3HR–667916) reflects a July 25, 2001 "customer authorized transfer" from account 3HR–663246 (Newbro's account) in the amount of $1 million; a second Freed account (3HR–65287) reflects a "customer authorized transfer" from account 3HR–663246 in the amount of $120,000. (Weintraub Decl. Exs. C and D)

After these transfers, Eberhard assured defendants that their accounts now reflected the appropriate balances. (L. Freed Decl. ¶¶ 20–21; J. Freed Decl ¶ 3) Despite these assurances, defendants immediately transferred their funds to accounts with a different broker. (L. Freed Decl. ¶¶ 22–23, Ex. C) Defendants now contend that they had no reason at the time to suspect that the transferred funds belonged to someone else. (J. Freed Decl. ¶ 3; L. Freed Decl. ¶ 17) Nevertheless, it is undisputed that, within a few months of the transfer, defendants retained an attorney to investigate the source of the funds. (J. Freed Decl. ¶ 4; L. Freed Decl. ¶¶ 21, 23; Steiner Decl. ¶ 4) On November 19, 2001, Leonard Steiner, counsel for the Freeds, wrote to Eberhard about the funds that had been "transferred into the Freed account from another Clearing Services of America account, no. 3HR663246." (Steiner Decl. Ex. A) Steiner requested that Eberhard provide him with the "name and address of the account holder of account no. 3HR663246". (Steiner Decl. Ex. A) On December 10, 2001, Eberhard responded to Steiner's letter with the explanation that the funds had been transferred into and out of various accounts because the Freeds were in the process of seeking a divorce. (Steiner Decl. Ex. B) In February 2003, Steiner received the name of the account holder from CSA, but no additional information. (Steiner Decl. ¶ 9, Ex. E) In a letter dated July 28, 2003, plaintiff's counsel contacted Steiner to claim the $1,120,000 that had been improperly transferred to his clients. (Steiner Decl. ¶ 11, Ex. F)

In the meantime, Eberhard had been charged in an indictment with several counts of securities violations and mail fraud. (Def. 56.1 ¶ 8) On September 8, 2003, the Securities Investor Protection Corporation filed a liquidation proceeding against CSA pursuant to SIPA. (Steiner Decl., Ex. I) Paragraph II of the order commencing the liquidation proceeding named Thomas K. Vandiver as trustee for the liquidation and business of CSA. (Steiner Decl., Ex. I) On September 14, 2004, Eberhard pled guilty to the criminal charges. *United States v. Eberhard,* 2005 WL 2172031, *1–*2 (S.D.N.Y. Sept.12, 2005). U.S. District Judge Robert W. Sweet sentenced Eberhard to 160 months imprisonment. *Id.*

*Choice of Law*

 A federal court sitting in diversity applies the choice of law principles of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). On issues of substantive law, New York courts employ the "paramount interest" test that gives "controlling effect to the law of the jurisdiction which has the greatest concern with, or interest in, the specific issue raised in the litigation. . . ." *Neumeier v. Kuehner,* 31 N.Y.2d 121, 127, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972). It is undisputed the claims arose out of the criminal acts of a New York broker that he committed while working in New York on accounts that were opened and maintained in New York. (Newbro Decl. ¶¶ 5–6; Def. Resp. to Pl. 56.1 ¶¶ 10–11) Neither party has advocated applying the laws of any other state to this case. Therefore, this Court will apply New York law to the issues raised in this case.

*Summary Judgment Standard*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief. A fact is material if it "might affect the outcome of the suit under the governing law . . ." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law. *Vermont Teddy Bear Co., Inc. v. 1–800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir.2004).

When the moving party has met this initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Fed.R.Civ.P. 56(e). In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" *Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 84 (2d Cir. 2004).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judg-

ment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995) (quotations and citations omitted); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In reviewing a motion for summary judgment, the court must scrutinize the record, and grant or deny summary judgment as the record warrants. Fed.R.Civ.P. 56(c). In the absence of any disputed material fact, summary judgment is appropriate. *Id.* When cross-motions for summary judgment are made, the standard is the same as that for an individual motion. *See Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir.2001).

## I. *Purported Failure to Join an Indispensable Party*

Defendants argue that this Court should dismiss this case because there is an indispensable party that should be joined to this action, the SIPA Trustee.[1] Defendants' assertion arises out of a written agreement between Plaintiff and the SIPA Trustee dated January 10, 2005. (Steiner Decl., Ex. U at 1)

In the agreement, the SIPA Trustee and plaintiff agreed that the latter has an "allowed claim" of $1,610,575.51 pertaining to his CSA account. (Steiner Decl., Ex. U at 1) It is not clear from the record how the Trustee and plaintiff arrived at this figure, but the document recites that Plaintiff had already received $500,000 of his allowed claim from the Trustee. (Steiner Decl., Ex. U at 1) In the agreement, plaintiff purports to assign any and all claims that he "shall or may have arising out of or relating to" his CSA account to the SIPA Trustee. (Steiner Decl., Ex. U at 1) Despite using the language of a general assignment of claims in one paragraph, another paragraph of the agreement recognizes plaintiff's right to prosecute this action and provides that the SIPA Trustee "reserves the right to first reduce the unsatisfied portion of [plaintiff's] Customer Claim and then the satisfied portion of [plaintiff's] Customer Claim, by any recovery" plaintiff obtains in this action. (Steiner Decl., Ex. U at 2) Taken together, the provisions of the agreement operate as an assignment of all claims, except the claims that plaintiff is expressly authorized to pursue, *i.e.* the claims in this action.

In the view of the Freeds, the agreement left open the possibility that Newbro no longer owned his claim against the Freeds and that the Trustee could seek a double recovery against the Freeds. (Def. Mem. of Law at 14–15) To address any ambiguity concerning this agreement, the SIPA Trustee, by his counsel, appeared before me on November 1, 2005. (Docket No. 75) On December 27, 2005, the SIPA Trustee submitted a signed statement to this Court, which provided, in part:

> Despite the language of the assignment in the January 10, 2005 agreement by and between Michael Newbro and the

---

**1.** Rule 19(a) of the Federal Rules of Civil Procedure provides:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Trustee, any claim against Lance Freed and Judith Fisher Freed (the "Freeds") arising from their receipt of $1,120,000.00 in funds on or about July 25, 2001, belongs solely to Michael Newbro and not to the Trustee. [In addition, t]he Trustee irrevocably renounces any claim against the Freeds arising from their receipt of $1,120,000.00 in funds.

(Docket No. 81 at 2) The Trustee served the statement on plaintiff and defendants. (Docket No. 82)

■ Based upon my reading of the agreement and the unambiguous statement of the Trustee, defendants are not subject to a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of" the Trustee's interest. Fed.R.Civ.P. 19(a)(2)(ii). The claims against defendants for $1,120,000 in unauthorized transfers belong solely to plaintiff, not the SIPA Trustee. Therefore, the SIPA Trustee cannot assert a claim for return of those funds against defendants, and there is no need to join the SIPA Trustee to this litigation. *Cf. PPM Fin., Inc. v. Norandal USA, Inc.*, 297 F.Supp.2d 1072, 1096–97 (N.D.Ill.2004) (holding that joinder was not necessary because plaintiff "must be paid in full before the [non-parties] receive any payment").

Defendants' motion to dismiss for failure to join an indispensable party under Rule 19(a) is denied.

*Conversion Claim*

Plaintiff contends that the funds transferred to the Freeds belong to him. He asserts that the funds were specific and identifiable both before and after the transfer, and are now recoverable under the tort of conversion. He further argues that no material fact relevant to the conversion claim is in dispute and that he is entitled to judgment as a matter of law.

In response, defendants argue that plaintiff stands in essentially the same position as a bank customer suing his bank—or at least an investor suing his broker—for allegedly misusing the customer's funds and urge that plaintiff may have a claim for breach of contract, but not for the tort of conversion. (Def. Mem. of Law at 19; Def. Supp. Mem. of Law at 1–4)

■ In New York, "[c]onversion occurs when a defendant exercises unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession." *LoPresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir.1997) (citing *Bankers Trust Co. v. Cerrato, Sweeney, Cohn, Stahl & Vaccaro*, 187 A.D.2d 384, 385, 590 N.Y.S.2d 201 (1st Dep't 1992)). New York distinguishes claims that the defendant wrongfully detained—in contrast to having wrongfully taken—the property in question. *See generally MacDonnell v. Buffalo Loan, Trust & Safe Deposit Co.*, 193 N.Y. 92, 101, 85 N.E. 801 (1908). For claims of wrongful detention, "[w]here possession is originally lawful, a conversion does not occur until the owner makes a demand for the return of the property and the person in possession of the property refuses to return it." *In re Estate of King*, 305 A.D.2d 683, 683, 759 N.Y.S.2d 895 (2d Dep't 2003). *See also D'Amico v. First Union Natl. Bank*, 285 A.D.2d 166, 172, 728 N.Y.S.2d 146 (1st Dep't 2001).

"Money may be the subject of conversion if it is specifically identifiable and there is an obligation to return it or treat it in a particular manner." *Hoffman v. Unterberg*, 9 A.D.3d 386, 388, 780 N.Y.S.2d 617 (2d Dep't 2004). *See also Global View Ltd. Venture Capital v. Great Cent. Basin Exploration*, 288 F.Supp.2d 473, 479 (S.D.N.Y.2003) (citing *Mfrs. Hanover Trust Co. v. Chem. Bank*, 160 A.D.2d 113,

124, 559 N.Y.S.2d 704 (1st Dep't 1990)). However, "the conversion claim must be for recovery of a particular and 'definite sum of money, although the specific bills are not identified . . .'." *ADP Investor Commc'n Servs., Inc. v. In House Attorney Servs., Inc.,* 390 F.Supp.2d 212, 224 (E.D.N.Y.2005) (quoting *Jones v. McHugh,* 37 A.D.2d 878, 325 N.Y.S.2d 102 (3d Dep't 1971)).

The First Department has held that "funds of a specific, named bank account are sufficiently identifiable" to support a conversion claim. *Republic of Haiti v. Duvalier,* 211 A.D.2d 379, 384, 626 N.Y.S.2d 472 (1st Dep't 1995) (citing *Payne v. White,* 101 A.D.2d 975, 976, 477 N.Y.S.2d 456 (3d Dep't 1984)). Furthermore, the viability of a conversion claim to recover money in a bank account does not turn on whether the account was the destination or the origin of the funds in question. *Compare id.* (destination) *with Lenczycki v. Shearson Lehman Hutton, Inc.,* 238 A.D.2d 248, 248, 656 N.Y.S.2d 609 (1st Dep't 1997) (origin). *See also Matter of Kleinberg v. Heller,* 38 N.Y.2d 836, 842, 382 N.Y.S.2d 49, 345 N.E.2d 592 (1976) (holding that one owner of a joint bank account may sue the other owner for conversion when the latter withdraws an amount exceeding the half to which she was entitled); *Sperrazza v. Kail,* 267 A.D.2d 692, 693, 699 N.Y.S.2d 609 (3d Dep't 1999) (same). The result is the same if the money contained in such an account is subsequently withdrawn or transferred elsewhere. *See Banco Central de Paraguay v. Paraguay Humanitarian Found., Inc.,* 2005 WL 1561504, at *4 (S.D.N.Y. June 30, 2005) (citing *Payne,* 101 A.D.2d at 976, 477 N.Y.S.2d 456).

In New York, an unauthorized wire transfer from one bank account to another constitutes conversion. *See, e.g., Mfrs. Hanover Trust Co.,* 160 A.D.2d at

124–25, 559 N.Y.S.2d 704; *Correspondent Servs. Corp. v. J.V.W. Invs. Ltd.,* 120 F.Supp.2d 401, 405 (S.D.N.Y.2000) (applying New York law to an allegedly unauthorized wire transfer from a bank to a brokerage firm). Courts have also found accounts outside the banking context to be sufficiently "specific" and "identifiable" such that their unauthorized use can give rise to conversion claims. *See, e.g., LoPresti,* 126 F.3d at 42 (holding that union dues held in company's general account were sufficiently specific and identifiable); *Pioneer Commercial Funding Corp. v. United Airlines, Inc.,* 122 B.R. 871, 885 (S.D.N.Y.1991) (holding that accounts receivable were sufficiently specific and identifiable). Ordinarily, funds deposited in a brokerage account do not become an asset of the brokerage firm; rather, at all times, they belong to the customer only. *See Baker v. Drake,* 66 N.Y. 518 (1876) (holding that "a sale of the stock by the broker . . . without notice to the customer of the time and place of sale[ ] is a conversion"); *Jordan v. UBS AG,* 11 A.D.3d 283, 284, 782 N.Y.S.2d 722 (1st Dep't 2004) (observing that stockbroker owes client a fiduciary duty to buy and sell securities in accordance with client's instructions).

In moving for summary judgment on the conversion claim, defendants rely upon several cases in which a bank customer asserted a conversion claim against his or her bank. For example, the Second Circuit has held that " 'funds deposited in a bank account are not sufficiently specific and identifiable, in relation to the bank's other funds, to support a claim for conversion against the bank." *Fundacion Museo de Arte Contemporaneo de Caracas–Sofia Imber v. CBI–TDB Union Bancaire Privee,* 160 F.3d 146, 148 (2d Cir.1998) (quoting *Chem. Bank v. Ettinger,* 196 A.D.2d 711, 602 N.Y.S.2d 332 (1st Dep't 1993)). The rationale for this rule is that funds

deposited with a bank become an asset of the bank, and the bank, in turn, becomes indebted to the depositor. *See Feinberg v. Katz,* 2002 WL 1751135, *16–*17 (S.D.N.Y. July 26, 2002) (applying New York law). Ordinarily, when the bank has misused the depositor's money, the depositor's remedy lies in contract—not tort. *See Tevdorachvili v. Chase Manhattan Bank,* 103 F.Supp.2d 632, 643 (E.D.N.Y.2000) (collecting cases applying New York law). As defendants note, there is some authority extending this rule to customers of other financial institutions, such as brokerage houses, who have brought conversion claims against those institutions. *See, e.g., Citadel Mgmt., Inc. v. Telesis Trust, Inc.,* 123 F.Supp.2d 133, 148 n. 4 (S.D.N.Y. 2000); *High View Fund, L.P. v. Hall,* 27 F.Supp.2d 420, 429 (S.D.N.Y.1998).

■ In this action, plaintiff is not asserting claims against CSA or Eberhard. Instead, plaintiff is suing another client of an admittedly crooked broker, the transferee of separate and identifiable funds. Defendants are not in the position of a bank or other financial institution that had a pre-existing contractual relationship with a customer. Thus, the rationale underlying courts' reluctance to permit customers to proceed against the depository institution on a conversion theory does not apply here. *See generally Fesseha v. TD Waterhouse Investor Servs., Inc.,* 305 A.D.2d 268, 269, 761 N.Y.S.2d 22 (1st Dep't 2003) (holding that a "cause of action for conversion cannot be predicated on a mere breach of contract").

After oral arguments and additional briefing on this issue, defendants have identified no decision by a New York court holding that a conversion claim may not be asserted when a third party transfers, without authorization, funds from one client's account to another's. Instead, defendants argue that plaintiff and Eberhard

somehow contemplated this very scenario because the form agreement between plaintiff and Pershing Clearing Services—the clearinghouse for Eberhard's company—addresses "free credit balances" in a client's account. (Def. Suppl. Mem. of Law at 2–3) These balances are the funds remaining in a customer's account after the broker has invested in various securities or mutual funds on behalf of the customer and accounted for any fees associated with those transactions. Specifically, the agreement between plaintiff and Pershing provides:

> Any free credit balance carried for your account represents funds payable upon demand which, although property accounted for on Pershing's books of account, are not segregated and may be used in the conduct of its business.

(Steiner Suppl. Decl. Ex. A) Thus, a claim against a broker for converting funds in a free credit balance fails for the same reason as a customer's claim against a bank—the funds at issue arise from a debtor-creditor relationship and are not segregated vis-à-vis other accounts at the brokerage firm. *See Bissell v. Merrill Lynch & Co.,* 937 F.Supp. 237, 246–47 (S.D.N.Y. 1996). Here, the claim is not against the broker and merely seeks to undo the improper transfer.

■ An alternative defense offered by defendants is that they had no reason to doubt that the money was theirs, and thus they have never had any "obligation to return" such funds to plaintiff. (Def. Mem. of Law at 19; Def. Repl. Mem. of Law at 7–8) However, it is not a defense to conversion that one mistakenly believed that the property in question was their own. *See Boyce v. Brockway,* 31 N.Y. 490, 492–92 (1865). "[C]onversion does not require defendant's knowledge that he is acting wrongfully, but merely an intent to exercise dominion or control over property

in a manner inconsistent with the rights of another." *LoPresti,* 126 F.3d at 42 (applying New York law). *See also Key Bank v. Grossi,* 227 A.D.2d 841, 843, 642 N.Y.S.2d 403 (3d Dep't 1996) ("Conversion is a tort which can occur without wrongful intent ...."). Given that plaintiff owned the money invested in his account and lost possession without his consent, defendants had an obligation to return such funds to plaintiff. *See D'Ambrosio v. Engel,* 292 A.D.2d 564, 565, 741 N.Y.S.2d 42 (2d Dep't 2002), *lv. to appeal denied,* 99 N.Y.2d 503, 753 N.Y.S.2d 806, 783 N.E.2d 896 (2002). On similar facts, the Fifth Circuit recently affirmed a district court's grant of summary judgment to the plaintiff on a theory of unjust enrichment. *See Eisenberg v. Grand Bank For Sav., FSB,* 207 F.Supp.2d 553, 561 (S.D.Miss.2002), *aff'd,* 70 Fed.Appx. 765 (5th Cir.2003) (noting that the funds received by defendant were "easily and clearly traceable" to plaintiff). Eberhard may have owed defendants $1 million before the transfer, but "one who receives money from a thief in satisfaction of a pre-existing debt does not have a defense against the person from whom the money was stolen." *Id.* at 559.

In opposing plaintiff's motion for summary judgment, defendants argue that plaintiff "was aware of the transfers and acquiesced in them" and thus cannot now, as a matter of law, sue for conversion. (Def. Mem. of Law at 18; Def. Resp. to Pl. 56.1 ¶ 12) Defendants' assertion is unsupported. Mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York,* 88

F.3d 63, 71 (2d Cir.1996). Following transfer, the timeliness of the plaintiff's assertion of his claim is measured by the statute of limitations.[2] *See* N.Y. C.P.L.R. § 214[3] (providing a limitation of three years). Defendants do not assert a defense based on the statute of limitations.

The funds that were transferred from the Newbro account to the Freeds' accounts were moved in two transfers—one for $1,000,000 and the other $120,000. (Newbro Decl. ¶¶ 5–6; Def. Resp. to Pl. 56.1 ¶¶ 10–11) No reasonable jury could conclude that these funds, both before and after the transfers, were anything other than separate and identifiable. The Freeds do not dispute that immediately prior to the transfer the funds belonged to New-bro. The Freeds also do not claim any independent right to the money belonging to Newbro. Finally, there is no dispute that, in a letter dated July 28, 2003, plaintiff's counsel demanded the return of the $1,120,000 from the Freeds, and that the Freeds refused to comply with this demand. (Steiner Decl. ¶ 11, Ex. F) As a result, plaintiff's motion for summary judgment is granted, and defendants' motion for summary judgment on the claim of conversion is denied.

*Unjust Enrichment Claim*

Plaintiff also asserts a claim for restitution based upon a theory of unjust enrichment against defendants. In doing so, plaintiff argues that defendants were enriched at his expense, and that equitable considerations strongly weigh against allowing defendants to retain the funds transferred from his account to theirs.

---

**2.** It is not clear from the case law whether conversion is a legal or equitable claim, and thus whether a defendant may assert equitable defenses. *Compare Trepuk v. Frank,* 104 A.D.2d 780, 480 N.Y.S.2d 889 (1st Dep't 1984) (characterizing conversion as a legal claim) *with Feinberg v. Allen,* 143 A.D. 866,

128 N.Y.S. 906 (3d Dep't 1911) (applying equitable estoppel defense to conversion claim). If and to the extent that equitable defenses may be asserted on a claim for conversion, they fail for the reasons discussed below in connection with plaintiff's unjust enrichment claim.

(Pl. Mem. of Law at 9) In moving for summary judgment, defendants invoke several equitable doctrines to justify their refusal to return the funds to plaintiff, including mistake of fact, equitable estoppel and laches. (Def. Mem. of Law at 23–24; Def. Repl. Mem. of Law at 10)

In New York, a restitution claim based upon a theory of unjust enrichment requires that (1) defendants were enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendants to retain what plaintiff is seeking to recover. *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir.2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 1704, 161 L.Ed.2d 525 (2005) (citing *Clark v. Daby*, 300 A.D.2d 732, 751 N.Y.S.2d 622 (3d Dep't 2002)). Specifically, a "cause of action for unjust enrichment arises when one party possesses money … that in equity and good conscience they should not have obtained or possessed because it rightfully belongs to another." *Strong v. Strong*, 277 A.D.2d 533, 534, 715 N.Y.S.2d 499 (3rd Dep't 2000). "Unjust enrichment, however, does not require the performance of any wrongful act by the one enriched. Innocent parties may frequently be unjustly enriched." *Simonds v. Simonds*, 45 N.Y.2d 233, 242, 408 N.Y.S.2d 359, 380 N.E.2d 189 (1978) (citations omitted). *See also Ross v. F.E.I., Inc.*, 150 A.D.2d 228, 232, 541 N.Y.S.2d 400 (1st Dep't 1989). Furthermore, "[t]he unjust enrichment claim does not require that the party enriched take an active role in obtaining the benefit." *Aetna Cas. & Sur. Co. v. LFO Constr. Corp.*, 207 A.D.2d 274, 277, 615 N.Y.S.2d 389 (1st Dep't 1994).

A claim of restitution based upon a theory of unjust enrichment is an equitable remedy. *See Dubbs v. Stribling & Assocs.*, 274 A.D.2d 32, 47, 712 N.Y.S.2d 19 (1st Dep't 2000). The powers of a court sitting in equity are "less hampered by technical difficulties than a court of law." *Cavin v. Gleason*, 105 N.Y. 256, 262–63, 11 N.E. 504 (1887). "[P]rinciples of equity mandate consideration of the totality of the circumstances." *Lake Minnewaska Mountain Houses, Inc. v. Rekis*, 259 A.D.2d 797, 799, 686 N.Y.S.2d 186 (3rd Dep't 1999) (concluding that issues of fact existed and thus denying summary judgment). "In doing so, courts will consider whether the benefit remained with the defendant, and whether defendant's conduct was 'tortious or fraudulent'." *Merrill Lynch, Pierce, Fenner & Smith v. Chipetine*, 221 A.D.2d 284, 286–86, 634 N.Y.S.2d 469 (1st Dep't 1995).

In moving for summary judgment, defendants do not contend that plaintiff has failed to establish the first two elements of a restitution claim. Rather, defendants assert two arguments that address the third element—whether equity and good conscience militate against permitting them to retain the transferred funds. (Def. Mem. of Law at 23) As discussed above, defendants invoke several equitable doctrines in response to plaintiff's claim for unjust enrichment, including "mistake of fact", equitable estoppel, discharge for value and laches. (Def. Mem. of Law at 23–24; Def. Repl. Mem. of Law at 10) However, defendants essentially argue that plaintiff has failed to initiate this action in a timely fashion and therefore should be barred from asserting his claim for unjust enrichment. (Def. Mem. of Law at 23) Defendants do not assert that the statute of limitations bars the claim. Defendants' arguments in favor of granting them summary judgment and denying summary judgment to plaintiff will first be analyzed in the context of a laches defense.

In New York, the doctrine of laches requires that "a plaintiff's inaction has prejudiced the defendant and rendered

recovery inequitable." *Hilgendorff v. Hilgendorff,* 241 A.D.2d 481, 481, 660 N.Y.S.2d 150 (2d Dep't 1997). *See generally* 75A N.Y. Jur.2d § 357. To establish laches, a party must show: "(1) conduct by an offending party giving rise to the situation complained of, (2) delay by the complainant in asserting his or her claim for relief despite the opportunity to do so, (3) lack of knowledge or notice on the part of the offending party that the complainant would assert his or her claim for relief, and (4) injury or prejudice to the offending party in the event that relief is accorded the complainant." *Cohen v. Krantz,* 227 A.D.2d 581, 582, 643 N.Y.S.2d 612 (2d Dep't 1996).

 Defendants have failed to satisfy the third and fourth elements of a laches defense. As discussed in the context of plaintiff's claim for conversion, defendants realized immediately upon reviewing their July 2001 account statement that $1,000,000 had been transferred from another customer's account. Although defendants did not know the name of the account owner, the circumstances surrounding this transfer and defendants' prior dealings with Eberhad sufficiently put them on notice that someone would eventually assert ownership of the funds. Indeed, defendants hired counsel within months of receiving the funds from Newbro's account and then transferring those funds elsewhere. Defendants have also made no showing that Newbro's delay in asserting his claim caused them injury or somehow prejudiced their position in this litigation. Throughout this period, both parties appear to have preserved substantial evidence and generally cooperated with each other during discovery. Absent a showing of defendants' lack of notice and prejudice, laches does not bar plaintiff's recovery.

 Defendants explain their failure to return the funds to plaintiff on the grounds of their "mistake of fact" of thinking that the funds belonged to them. (Def. Mem. of Law at 23) Moreover, defendants attribute this mistake to plaintiff's approximately "two year delay in discovering the transfers." (Def. Mem. of Law at 23) However, defendants have identified no case law suggesting that, in the absence of satisfying the doctrine of laches, the recipient of ill-gotten funds may retain those funds simply because the recipient, at one time, thought he had rightfully acquired them. Defendants rely solely on *Nationwide Merch. Bank, Ltd. v. Star Fire Int'l* for the proposition that a recipient of such funds may retain them when the recipient had "changed its position to its detriment in reliance upon the mistake so that requiring that it refund the money paid would be 'unfair'." 889 F.Supp. 124, 126–27 (S.D.N.Y.1995) (quoting *Banque Worms v. BankAmerica Int'l,* 77 N.Y.S.2d 362, 366, 568 N.Y.S.2d 541, 570 N.E.2d 189 (1991)).

However, the defendants have not demonstrated how they have relied on this unauthorized transfer in any way. Although defendants now maintain that they had no reason to suspect that the transferred funds did not belong to them, they also hired an attorney to investigate the matter and uncover the true source of those funds. (J. Freed Decl. ¶ 4; L. Freed Decl. ¶ 24; Steiner Decl. ¶ 4, 9) Indeed, the first letter that defendants' counsel wrote to Eberhard focused on the fact that defendants' account statement indicated that the funds appeared as a result of a "customer authorized transfer". (Steiner Decl. Ex. A) Defendants have long been aware that these funds originated from another customer's account and have actually endeavored to identify that customer. Instead of relying on the "mistake" in this case, defendants have persistently sought to identify the mistake, at

least until Newbro finally contacted defendants. As in *Nationwide Merch. Bank*, there is nothing unfair here about requiring defendants to return funds that, from the moment of their receipt, defendants had suspected—if not confirmed beyond all doubt—belonged to another victim of Eberhard's misfeasance.

■ Defendants finally contend that Newbro should be equitably estopped from recovering because he failed—in defendants' view—to discover the transfers of his funds sufficiently quickly. Defendants again identify only *Nationwide Merch. Bank*, 889 F.Supp. at 124, to support their argument. (Def. Mem. of Law at 24) In that case, the court noted, "where one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it." *Nationwide Merch. Bank*, 889 F.Supp. at 127. Defendants here argue that plaintiff—as the third party—enabled Eberhard to occasion the loss by failing to pursue his own funds with sufficient diligence. (Def. Mem. of Law at 24) However, Judge Leisure in *Nationwide Merch. Bank* rejected this defense of equitable estoppel because the defendant had "notice of the acts of the third." 889 F.Supp. at 127. In such a situation, the recipient of ill-gotten funds is not, as a matter of law, "innocent" and thus cannot invoke equitable estoppel to retain those funds. *Id.* Instead, "equity and good conscience militate against permitting defendant[s] to retain" the transferred funds. *See Briarpatch*, 373 F.3d at 306. Therefore, plaintiff has satisfied the third element of a restitution claim as a matter of law.

Defendants' motion for summary judgment on the claim of restitution on the theory of unjust enrichment is denied. Plaintiff's motion for summary judgment on this claim is granted.

*Fraud Claim*

■ The third cause of action asserted by plaintiff is a claim of fraud. In order to state such a claim in New York, a plaintiff must demonstrate: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citing *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996)). "[U]nder New York law, each element of a fraud claim must be proven by clear and convincing evidence." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 784-5 (2d Cir.2003) (citing *Hutt v. Lumbermens Mut. Cas. Co.*, 95 A.D.2d 255, 256-57, 466 N.Y.S.2d 28 (2d Dep't 1983)).

■ Where, as here, no affirmative misrepresentation is alleged, it is incumbent upon the party charging fraud to establish that there was a duty to disclose the omitted fact. *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir.1995) (citing *Gurnee v. Hasbrouck*, 267 N.Y. 57, 195 N.E. 683 (1935)). This duty usually arises when the plaintiff and the defendant have a fiduciary or other similar confidential relationship between them. *See Blue Chip Emerald LLC v. Allied Partners Inc.*, 299 A.D.2d 278, 279, 750 N.Y.S.2d 291 (1st Dep't 2002) (citing *Birnbaum v. Birnbaum*, 73 N.Y.2d 461, 541 N.Y.S.2d 746, 539 N.E.2d 574 (1989)).

■ However, a duty to disclose material information may also arise under the "special facts doctrine". For this doctrine to apply, the plaintiff must prove that "(1) one party has superior knowledge of certain information; (2) that information is

not readily available to the other party; and (3) the first party knows that the second party is acting on the basis of mistaken knowledge." *Banque Arabe et Internationale D'Investissement,* 57 F.3d at 155 (citing *Young v. Keith,* 112 A.D.2d 625, 627, 492 N.Y.S.2d 489 (3d Dep't 1985)). The superior knowledge held by one party renders its transaction without disclosure with another party "inherently unfair" and thus the transaction may constitute fraud. *P.T. Bank Cent. Asia v. ABN AMRO Bank N.V.,* 301 A.D.2d 373, 378, 754 N.Y.S.2d 245 (1st Dep't 2003).

 Plaintiff has failed to show evidence that he and defendants engaged in any sort of transaction that could give rise to a fraud claim. Defendants made no affirmative misrepresentations or material omissions to plaintiff because they were never aware of plaintiff until the transfer had already occurred. Eberhard stole from both plaintiff and defendants, and both parties suffered millions of dollars in losses as a result. However, there is no evidence supporting the claim that defendants themselves defrauded plaintiff.

In his brief, plaintiff cites several cases that he argues stand for the proposition that "a claim for fraud may arise where a party fails to speak even in the absence of the relationship." (Pl. Repl. Mem. at 11) This misstates the holdings of these cases. These cases hold that a duty to disclose may arise in the absence of a "fiduciary or other similar relation of trust," but they do not recognize such a duty in the absence of any relationship at all. *See Travelers Indem. Co. of Ill. v. CDL Hotels USA, Inc.,* 322 F.Supp.2d 482, 499 (S.D.N.Y.2004) (applying New York law). Indeed, the fraud claims in these cases all arise from some kind of commercial transaction involving the plaintiff and the defendant. *See id.* (insurer and insurance broker); *Miele v. Am. Tobacco Co.,* 2 A.D.3d 799, 803–805, 770 N.Y.S.2d 386 (2d Dep't 2003) (smoker and cigarette manufacturer); *Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150–51 (2d Cir.1993) (investor and company selling stock warrants).

 The general rule is that parties dealing at "arms length in a commercial transaction" do not have a "relation of confidence or trust sufficient to find the existence of a fiduciary relationship." *Mid–Island Hosp., Inc. v. Empire Blue Cross and Blue Shield,* 276 F.3d 123, 130 (2d Cir.2002), *cert. denied,* 537 U.S. 882, 123 S.Ct. 104, 154 L.Ed.2d 140 (2002). However, the "special facts" doctrine is an exception to this rule because it recognizes that, sometimes, even commercial transactions may be "inherently unfair" when they are conducted with a sufficient imbalance of relevant information. *See P.T. Bank Cent. Asia,* 301 A.D.2d at 378, 754 N.Y.S.2d 245. Here plaintiff and defendants had no relationship with each other at all. Rather, plaintiff had his relationship with Eberhard, and defendants had their relationship with Eberhard. Other than Eberhard's decision to transfer of funds from plaintiff's account to defendants' account, there does not appear to be any other connection between the parties and this is not sufficient to give rise to a fraud claim. (Pl. 56.1 ¶ 7; Pl. Repl. Mem. at 5)

The defendants' motion for summary judgment on the plaintiff's claim of fraud is granted.

*Prejudgment Interest*

Under New York law, prejudgment interest is recoverable as a matter of law based upon "an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property." N.Y. C.P.L.R. § 5001(a) (McKinney 2005). Prejudgment interest is awarded as a matter of right under "New York's prevailing

policy, interwoven into § 5001, that 'interest must be added [in actions where persons are deprived of the use of money] if we are to make the plaintiff whole.'" *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 695 (2d Cir.1983) (alteration in original) (quoting *Prager v. N.J. Fidelity & Plate Glass Ins. Co.*, 245 N.Y. 1, 5–6, 156 N.E. 76 (1927) (Cardozo, C.J.)). "Interest shall be computed from the earliest ascertainable date the cause of action existed...." N.Y. C.P.L.R. § 5001(b). New York law calculates prejudgment interest at the statutory rate of nine percent per annum, on a simple, rather than compounded, basis. N.Y. C.P.L.R. § 5004 (McKinney 2005). *See Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir.1998) (citing *Patane v. Romeo*, 235 A.D.2d 649, 652 N.Y.S.2d 142 (3d Dep't 1997)).

▮ New York courts have awarded prejudgment interest on conversion claims. *See, e.g., Hunt v. Hunt*, 13 A.D.3d 1041, 788 N.Y.S.2d 219 (3d Dep't 2004); *Eighteen Holding Corp. v. Sholom Drizin*, 268 A.D.2d 371, 701 N.Y.S.2d 427 (1st Dep't 2000). However, New York law draws a distinction between a conversion claim where a person has wrongfully taken property and one where a person did not take the property but wrongfully retains the property. *See* 2 New York Pattern Jury Instructions—Civil 2d ed. 3:10–11 (West 2005). In the former, no demand is required; whereas in the latter, demand is required as an element of the claim. *See In re Estate of King*, 305 A.D.2d at 683, 759 N.Y.S.2d 895; *D'Amico v. First Union Natl. Bank*, 285 A.D.2d at 172, 728 N.Y.S.2d 146. Here, the Freeds did not take Newbro's money; rather, they failed to return it. An important rationale for the prejudgment interest rule is that the party against whom the claim is asserted could have stopped the running of interest by paying what was owed to the injured

party. *See Epter v. N.Y. City Transit Auth.*, 216 F.Supp.2d 131, 137 (E.D.N.Y. 2002). On July 25, 2001, when the wrongful transfer by Eberhard occurred, the Freeds would have had no way of knowing whose funds they had received, although they did learn the name of the account holder as of February 2003. The demand requirement in this case makes sense, and interest will not run until it was made. In this case, plaintiff did not demand the return of his funds until July 28, 2003, and interest will run from that date. (Steiner Decl ¶ 11, Ex. F)

Defendants do not dispute plaintiff's asserted entitlement to prejudgment interest if his conversion claim is successful. (Def. Mem. at 26; Def. Repl. Mem. at 14) Rather, they request that this Court in its discretion deviate from the 9% interest rate if the only viable claim is unjust enrichment. (Def. Mem. at 26; Def. Repl. Mem. at 14–15) However, as discussed above, this Court has concluded that plaintiff has satisfied the elements of both a conversion claim and an unjust enrichment claim. As a result, this Court will award prejudgment interest according to the statutory rate and method of calculation for the conversion claim. Given that the claim for unjust enrichment is "of an equitable nature," this Court, in the exercise of its equitable powers, will award interest from the date of July 28, 2003, to the present. *See* N.Y. C.P.L.R. § 5001(a).

*CONCLUSION*

For the reasons outlined above, the plaintiff's motion for summary judgment is GRANTED insofar as his First and Second Claims for Relief based on conversion and unjust enrichment and otherwise DENIED. The defendants' motion for summary judgment is GRANTED as to the Third Claim for Relief based on fraud and otherwise DENIED. The Clerk of Court shall enter a judgment in favor of plaintiff

as against defendants in the amount of $1,120,000 plus interest on that amount at the simple rate of 9% per annum, running from July 28, 2003.

SO ORDERED.